TRADEWINDS FORD SALES, INC. et al., Appellants,

v.

Don B. CASKEY et al., Appellees.

No. 5395.

Court of Civil Appeals of Texas, Eastland.

April 24, 1980.

Rehearing Denied June 5, 1980.

Walter Conrad, Randall Hopkins, Baker & Botts, Houston, Rick Rogers, Jr., Porter, Taylor, Gonzalez, Thompson & Rogers, James R. Sorrell, Jr., Sorrell, Anderson & Sorrell, Corpus Christi, for appellants.

C. M. Henkel, III, Corpus Christi, for appellees.

RALEIGH BROWN, Justice.

The issue for determination is whether a vehicle installment sales contract is in violation of the Texas Consumer Credit Code.[1] Tex.Rev.Civ.Stat.Ann. art. 5069–2.01 et seq. (Vernon Pamphlet Supp.1979).

Don B. Caskey and Ralph E. Caskey sued Tradewinds Ford Sales, Inc., Ford Motor Credit Company and Ford Motor Company alleging violations of the Texas Deceptive Trade Practices-Consumer Protection Act, the Texas Consumer Credit Code and the Federal Consumer Protection Act in connection with their purchase of a 1978 Ford Thunderbird. The automobile was financed by the Caskeys' execution of a retail installment contract with Tradewinds, which was later assigned to Ford Credit. Ford Credit and Tradewinds filed a counterclaim against the Caskeys alleging breach of contract for their failure to make payments. After the Deceptive Trade Practices portion of the suit was severed, removing Ford Motor Company from the instant case, a partial summary judgment was rendered against Tradewinds and Ford Credit for eight violations of the Texas Consumer Credit Code. Trial was then to the court on the remaining issues of attorney's fees; additional alleged violations of the Texas Consumer Credit Code; alleged violations of the Federal Truth-in-Lending Act; and alleged violations of Federal Reserve Regulation Z. Judgment was rendered in favor of the Caskeys against Tradewinds and Ford Credit for statutory penalties under the Texas Consumer Credit Code, including attorney's fees, for the eight violations thereof; recovery was denied under the Federal Truth-in-Lending Act, Federal Reserve Regulation Z[2] and the alleged additional violations of the Texas Consumer Credit Code. The Caskeys were found to have been in default on their contractual obligations, but because of the violations of the Texas Consumer Credit Code, Tradewinds and Ford Credit were denied recovery on their counterclaim. Tradewinds and Ford Credit appeal. We reverse and render.

In fourteen points of error, Tradewinds and Ford Credit contend that the trial court erred in granting judgment for the Caskeys because the installment contract did not violate the Consumer Credit Code in the specific instances found by the court.[3] Ap-

---

1. We note that Title 79 (Article 5069, Tex.Rev. Civ.Stat.Ann.) is not a code which has been promulgated pursuant to this state's continuing statutory revision program. However, for convenience and clarity we will refer to Article 5069 throughout this opinion as the "Code," "Texas Consumer Credit Code," or "Consumer Credit Code."

2. See *Ford Motor Credit Co. v. Milhollin,* —— U.S. ——, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980).

3. The majority of the alleged violations are found in paragraphs 19 and 20 of the contract which provide:

 19. DEFAULT

 Time is of the essence of this contract. In the event Buyer defaults in any payment, or fails to obtain or maintain the insurance required hereunder, or fails to comply with any other provision hereof, or Seller in good faith believes that the prospect of payment or performance hereunder is impaired, Seller shall have the right to declare all amounts due or to become due hereunder to be immediately due and payable and Seller shall have the right to repossess the property wherever the same may be found with free right of entry, and to recondition and sell the same at public or private sale. Upon request, Buyer shall deliver the Property to Seller at a place designated by Seller. Seller shall have the right to retain all payments made prior to repossession and Buyer shall remain liable for .any

pellants also urge that the court erred in refusing to grant judgment on their counterclaim.

■ Since the provisions of the Consumer Credit Code are penal in nature, these provisions will be strictly construed. *Commerce Trust Company v. Best,* 124 Tex. 583, 80 S.W.2d 942, 946 (1935); *Hight v. Jim Bass Ford,* 552 S.W.2d 490, 491 (Tex.Civ. App.—Austin 1977, writ ref'd n. r. e.). Also, any doubt as to the intention of the legislature to punish the conduct of the appellant should be resolved in favor of that party. *Gulf, Colorado & S. F. Ry. Co. v. Dwyer,* 84 Tex. 194, 19 S.W. 470 (1892).

## ACCELERATION OF MATURITY OF INDEBTEDNESS

■ The trial court concluded that the contract violated the Texas Consumer Credit Code by:

1. (C)ontractually allowing the Seller in paragraph 19 of the Retail Installment Contract to accelerate the maturity of the contract under conditions expressly prohibited in that same may be accelerated if the Buyer fails to comply with any provisions of the contract, all contrary to Section 7.07(1) of the Texas Consumer Credit Code.

Ford Credit and Tradewinds argue that the contract did not provide for acceleration of maturity of the indebtedness under conditions expressly prohibited by the Consumer Credit Code. We agree.

Article 5069–7.07(1) of the Code provides:

deficiency. Any personalty in or attached to the Property when repossessed may be held by Seller without liability and Buyer shall be deemed to have waived any claim thereto unless written demand by certified mail is made upon Seller within 24 hours after repossession. Buyer agrees to pay reasonable attorneys' fees (15% if permitted by law) and other expenses incurred by Seller in effecting collection, repossession or resale hereunder. Seller's remedies hereunder are in addition to any given by law and may be enforced successively or concurrently. Waiver by Seller of any default shall not be deemed a waiver of any other default.
20. GENERAL

No retail installment contract or retail charge agreement shall:

(1) Provide that the seller or holder may accelerate the maturity of any part or all of the amount owing thereunder unless (a) the buyer is in default on the performance of any of his obligations or (b) the seller or holder in good faith believes that the prospect of payment or performance is impaired.

Paragraph 19 of the contract allows the unpaid balance to be declared immediately due and payable in four specified instances:

(1) When the buyer defaults in any payment.

(2) When the buyer fails to obtain or maintain required insurance.

(3) When the buyer fails to comply with any provision of the contract.

(4) When the seller in good faith believes that the prospect of payment or performance is impaired.

We hold that none of the provisions listed above violates the Code in the manner found by the trial judge. A creditor has the right to contract for acceleration of the date of maturity when the buyer has defaulted in his obligation to make timely payments. *Ramo, Inc. v. English,* 500 S.W.2d 461, 466 (Tex.1973); *Motor & Industrial Finance Corporation v. Hughes,* 157 Tex. 276, 302 S.W.2d 386, 394 (1957). Also, with regard to the insurance requirement, Articles 5069–7.06(1) and 7.02(2) of the Code specifically permits a seller to require the maintenance of credit life or property insur-

No transfer, renewal, extension or assignment of this contract or any interest hereunder, and no loss, damage or destruction of or to the Property, shall release Buyer from his obligations hereunder. This contract constitutes the entire agreement between the parties and no modification hereof shall be valid in any event, and Buyer expressly waives the right to rely thereon, unless made in writing signed by Seller. Any provision of this contract prohibited by applicable law shall be ineffective to the extent of such prohibition without invalidating any other provision of this contract. This contract shall be governed by the laws of the state in which the original Seller is located as shown on the face of this contract.

ance. Furthermore, Article 5069–7.07(1)(a) expressly permits acceleration when "the buyer is in default on the performance of any of his obligations." Default in any payment and failure to obtain or maintain required insurance are clearly defaults in the performance of the buyer's obligations and thus are instances in which acceleration is expressly permitted by the Code.

The provision permitting acceleration if the buyer fails to comply with any provision of the contract essentially repeats the language of Article 5069–7.07(1)(a) and thus does not violate the Code. Nor do we find any violation in the provision which permits acceleration when the seller "in good faith believes that the prospect of payment or performance is impaired." This provision merely repeats the language found in Article 5069–7.07(1)(b) and does not violate the code.

## UNLAWFUL ENTRY AND BREACH OF THE PEACE COMMITTED IN REPOSSESSION

The trial court also concluded that the contract violated Article 5069–7.07(3)[4] of the Texas Consumer Credit Code by:

2. (C)ontractually allowing the Seller, pursuant to the terms of paragraph 19 of the Retail Installment Contract to enter upon Buyer's premises unlawfully and to commit a breach of peace in effecting repossession of the property, contrary to Section 7.07(3) of the Texas Consumer Credit Code in the following respects:

(a) By giving the Seller the right to repossess the property wherever the same may be found with free right of entry.

(b) By giving the Seller the right to retain personalty in or attached to the property when repossessed.[5]

Appellants urge that the parties have not agreed that appellants could enter appel-

lees' premises unlawfully and commit a breach of the peace in effecting repossession of the collateral. It is appellants' position that the contract permits repossession only if seller finds the collateral at a place where "free right of entry" exists. They contend that such "right of entry" is determined by rights given under the Texas Business & Commerce Code and, therefore, the language does not attempt an unlawful expansion of the seller's legal repossession rights or excuse an unlawful entry.

The contract provides in the event of default, "Seller shall have the right to repossess the Property wherever the same may be found with free right of entry . . . . . Any personalty in or attached to the Property when repossessed may be held by Seller without liability and Buyer shall be deemed to have waived any claim thereto unless written demand by certified mail is made upon Seller within 24 hours after repossession."

Appellants argue that the contract provision refers to the remedy of repossession specifically conferred by Tex.Bus. & Com. Code Ann. § 9.503 (Vernon Supp.1980) which provides in part:

Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action. . . .

The Caskeys contend that the language of the contract which gives the seller the right of repossession of the property "wherever the same may be found" gives seller a remedy beyond that allowed in the Texas Business & Commerce Code and, as a result, violates the Texas Consumer Credit Code.

In construing this contract we must apply the rule as stated in *Piper,*

---

**4.** Article 5069–7.07(3) provides:
No retail installment contract or retail charge agreement shall:
\* \* \* \* \* \*
(3) Authorize the seller or holder or other person acting on his behalf to enter upon the buyer's premises unlawfully or to commit any

breach of the peace in the repossession of a motor vehicle.

**5.** The right to retain personalty will be discussed under the heading of WAIVER OF BUYER'S RIGHTS OF ACTION, infra.

*Stiles & Ladd v. Fidelity and Deposit Company of Maryland*, 435 S.W.2d 934 (Tex.Civ. App.—Houston (1st Dist.) 1968, writ ref'd n. r. e.):

> It is the duty of the court to look to the entire instrument so that the effect or meaning of one part on any other part may be determined.

In addition, we must presume "that in contracting parties intend to observe and obey the law." *Nevels v. Harris*, 129 Tex. 190, 102 S.W.2d 1046 (1937); *Walker v. Temple Trust Co.*, 124 Tex. 575, 80 S.W.2d 935, 936 (Com.App.1935, opinion adopted).

Applying these rules, we hold the phrase "free right of entry" qualifies or limits the phrase "wherever the same may be found," and authorizes the seller to enter only where he has free right of entry. Thus, the contract does not authorize appellants to enter appellees' premises unlawfully and commit a breach of the peace in effecting repossession of the collateral.

### WAIVER OF BUYER'S RIGHTS OF ACTION

The trial court also concluded that the contract violated Article 5069–7.07(4) [6] of the Code by:

> 3. (C)ontractually providing in paragraph 19 of the Retail Installment Contract for a waiver of Buyer's rights of action against Seller or holder or any other person acting therefor for any illegal act committed in the repossession of the motor vehicle, all contrary to Section 7.07(4) of the Texas Consumer Credit Code in the following respects:
>
> (a) By giving the Seller the right to repossess the property wherever the same may be found with free right to entry.
>
> (b) By giving the Seller the right to retain all payments made prior to repossession.

(c) By giving the Seller the right to retain personalty in or attached to the property when repossessed without liability to the Seller.

(d) By requiring the Buyer to waive his rights to personalty in or attached to the property when repossessed.

(e) By requiring the Buyer to agree to pay "other expenses" incurred by the Seller in effecting collection, repossession or resale of the property.

Ford Credit and Tradewinds contend that paragraph 19 of the installment contract does not violate Article 5069–7.07(4) of the Texas Consumer Credit Code because it does not provide for a waiver of buyer's right of action against any person for illegal acts committed in the repossession of the motor vehicle.

However, the Caskeys argue, and the trial court so found: that the right to retain installment payments made prior to repossession; the provision that seller must pay "other expenses" incurred in effecting collection, repossession or resale of the property; and the provision that seller may hold, without liability, any personal property contained in the vehicle at the time of repossession all violate Article 5069–7.07(4). They contend these provisions amount to a waiver of the buyer's right of action for certain "illegal acts." We disagree.

The Caskeys have failed to point to any Texas law which makes it illegal to retain payments made prior to repossession of the collateral. Tex.Bus. & Com.Code Ann. § 9.504 (Vernon 1968) requires that a debtor in default receive any surplus funds remaining from a secured party's post-repossession disposition of collateral. However, this reimbursement is not made out of previously tendered installment payments, but from excess funds, if any, remaining after the secured party's disposition of the collateral. Retention of payments made

---

**6.** Article 5069–7.07(4) provides:

No retail installment contract or retail charge agreement shall:

\* \* \* \* \* \*

(4) Provide for a waiver of the buyer's rights of action against the seller or holder or other person acting therefor for any illegal act committed in the collection of payments under the contract or agreement or in the repossession of a motor vehicle.

prior to disposition of collateral is not an illegal act. Therefore, the contract provision permitting the seller to retain all payments made prior to repossession does not constitute a waiver of the Caskeys' right of action for an illegal act committed in the repossession of the motor vehicle.

■ We also disagree with the trial court's conclusion that requiring the Buyer to pay "other expenses" is a waiver of a buyer's right of action. Article 5069–7.-03(6) expressly permits a seller to charge a delinquent buyer for expenses incurred as a result of default. That article provides in part:

> In addition, such contracts may provide for the payment of an attorney's reasonable fee where it is referred for collection to an attorney not a salaried employee of the seller or holder of the contract, and for court costs and disbursements, and in the event of repossession, sequestration, or other action necessary to secure possession of a motor vehicle securing the payment of a retail installment contract, such contracts may provide for the charge and collection of actual and reasonable out-of-pocket expenses incurred in connection with such repossession or foreclosure, including costs of storing, reconditioning and reselling such motor vehicle, subject to the standards of good faith and commercial reasonableness set by the Uniform Commercial Code as adopted in Texas.

The contract provision requiring buyer to pay "other expenses" incurred by seller in effecting collection, repossession or resale of the property is therefore lawful under the express terms of the Consumer Credit Code.

■ We also disagree with the conclusion that the retention of personalty is an illegal act committed in the repossession of a vehicle. Articles 5069–7.07(3) and 7.07(4) refer to acts committed "in the collection of payments" or "in the repossession of a motor vehicle." Since the language in these articles is plain, unambiguous, and clear, it will be given effect as written. *Gateley v. Humphrey,* 151 Tex. 588, 254 S.W.2d 98

(1952); *Col-Tex Refining Co. v. Railroad Commission of Texas,* 150 Tex. 340, 240 S.W.2d 747 (1951).

■ The retention of personalty in or attached to a vehicle is an act which occurs after repossession. There is no reference in the Code to acts which occur after repossession. If the Legislature had intended to prohibit the waiver of rights of action for all "illegal acts," including acts committed after repossession, "it would have been a simple matter to have so stated." See *First State Bank of Bedford v. Miller,* 563 S.W.2d 572, 577 (Tex.1978). Therefore, even if retention of the personalty after repossession is an illegal act, a matter we are not required to consider, neither Article 5069–7.-07(3) nor 7.07(4) covers alleged illegal acts committed after repossession.

## BUYER'S AGREEMENT NOT TO ASSERT ANY CLAIMS OR DEFENSES

■ The trial court also concluded that the contract violated the Code by:

4. (C)ontractually providing in paragraph 20 of the Retail Installment Contract that any illegal aspect of the Contract is ineffective and thus requires Buyer to agree not to assert against the Seller any claims or defenses arising out of the sale of the property, contrary to Section 7.07(6) of the Texas Consumer Credit Code.

Article 5069–7.07(6) provides: No retail installment contract or retail charge agreement shall:

(6) Provide that the buyer agrees not to assert against the seller or holder of any claim or defense arising out of the sale.

The trial court concluded that the following sentence, found in paragraph 20 of the contract, violates the Code: "Any provision of this contract prohibited by applicable law shall be ineffective to the extent of such prohibition without invalidating any other provision of this contract." The court held such provision was an agreement by the buyer not to assert against the seller any claim or defense arising out of the sale. We disagree.

The provision does not provide exemptions under which the seller may escape liability from the penalties provided by Article 5069. It says nothing about what the buyer may or may not assert by way of a lawsuit. The provision only says that the entire contract is not invalidated merely because it contains a legally prohibited provision. It is a "savings provision" for all valid portions of the contract. It does not prohibit the buyer from asserting against the seller or holder any claim or defense arising out of the sale.

### UNEARNED FINANCE CHARGES

■ The trial court also found that the contract violated the Code by:

5. (C)ontractually allowing the Seller pursuant to paragraph 19 of the Retail Installment Contract, to accelerate upon default "all amounts due or to become due hereunder to be immediately due and payable" without the allowance or deduction of unearned finance charges as required under Section 7.04 of the Texas Consumer Credit Code.

6. By contracting, pursuant to paragraph 19 of the Retail Installment Contract, for interest and time price differential which is in the aggregate in excess of double the total amount of charges authorized by Section 7.03 of the Texas Consumer Credit Code in that Seller is authorized to declare "all amounts due or to become due hereunder to be immediately due and payable."

Ford Credit and Tradewinds urge that the trial court erred in concluding that the contract allowed the seller to accelerate upon buyer's default "all amounts due or to become due" without the allowance or deduction of unearned finance charges as required under Article 5069-7.04 of the Texas Consumer Credit Code. Also, they contend the court erred in concluding that such language contracted for interest and time price differential in excess of double the total amount of charge authorized by Article 5069-7.03 of the Code.

The Caskeys contend that, in the event of acceleration, the contract gives the Seller the right to collect finance charges which have not yet been earned. They argue that if the date of maturity is accelerated and the total unpaid finance charges then become due, those charges will exceed the limits authorized by Article 5069-7.03.

In considering whether a contract is illegal because of its acceleration clause, we will apply the rule as reannounced in *Smart v. Tower Land and Investment Company*, 597 S.W.2d 333, 340 (Tex.Sup., 1980), to the effect:

In *Walker v. Temple Trust Co.*, 124 Tex. 575, 80 S.W.2d 935 (1935) this court stated:

"While of course courts have no right to depart from the terms in which the contract is expressed to make legal what the parties have made unlawful, nevertheless when the contract by its terms, construed as a whole, is doubtful, or even susceptible of more than one reasonable construction, the court will adopt the construction which comports with legality. It is presumed that in contracting parties intend to observe and obey the law. For this reason the court will not hold a contract to be in violation of the usury laws unless, upon a fair and reasonable interpretation of all its terms, it is manifest that the intention was to exact more interest than allowed by law. "(T)he rule should be, as clearly recognized in motion for rehearing in the *Shropshire* Case (*Shropshire v. Commerce Farm Credit Co.*, 120 Tex. 400, 30 S.W.2d 282, 39 S.W.2d 11, 84 A.L.R. 1269), that unless the contract by its express and positive terms evidences an intention which requires a construction that unearned interest was to be collected in all events, the court will give it the construction that the parties intended that the unearned interest should not be collected."

See also *Spanish Village, Ltd. v. American Mortgage Company*, 586 S.W.2d 195 (Tex. Civ.App.—Tyler 1979, writ ref'd n. r. e.); Annot., 66 A.L.R.3d 650, 676 (1975).

There is no clear, convincing language in the contract under examination, and partic-

ularly in paragraph 19, that the collection of unearned finance charges was intended. We therefore presume that the contracting parties intended to observe and obey the law and thus no violation of Article 5069–7.-03 and 7.04 is shown.

## BUYERS' NAMES AND ADDRESSES

 The trial court concluded that the contract violated the Code by:

7. (N)ot containing the names and addresses of both Buyers as required by Section 7.02(5) of the Texas Consumer Credit Code.

We hold the contract did not fail to contain the names and addresses of both buyers as required by Article 5069–7.02(5) [7] of the Texas Consumer Credit Code. The contract contains the addresses of both buyers, 909 Rambler, Corpus Christi, Texas. While Don Caskey's name does not appear at the top of the contract, it is typed in at the middle of the front side of the contract and the signatures of both buyers appear at the bottom of the contract. Under these circumstances, the contract is in substantial compliance with and satisfies the purpose of Article 5069–7.02(5) of the Texas Consumer Credit Code. *Hight v. Jim Bass Ford, Inc.,* 552 S.W.2d 490 (Tex.Civ.App.—Austin 1977, writ ref'd n. r. e.).

## DISCLOSURE OF PRINCIPAL BALANCE

 Finally, the trial court concluded that the contract violated the Code by:

**7.** Article 5069–7.02(5) provides:

(5) The retail installment contract shall contain the names of the seller and the buyer, the place of business of the seller, the residence or other address of the buyer as specified by the buyer, and a description of the motor vehicle sold or to be sold.

**8.** Article 5069–7.02(6) provides in part:

(6) The retail installment contract shall specifically set out the following items:
(a) The cash sale price of the motor vehicle;
(b) The amount of the buyer's down payment, if any, specifying the amounts paid in money and in goods traded in;
(c) The difference between items (a) and (b);

8. (N)ot stating the principal balance as required by Section 7.02(6)(f) of the Texas Consumer Credit Code.

Appellants argue that the trial court erred in granting judgment for the appellees because the contract did state the principal balance as required by Article 5069–7.-02(6)(f).[8]

The details of the transaction set forth in the contract include in part:

| | | |
|---|---|---|
| (1) Cash Price | | $8,321.00 |
| Cash Down Payment | $800.00 | |
| Trade-In | $960.67 | |
| (2) Total Down Payment | | $1,760.67 |
| (3) Unpaid Balance of Cash Price (Difference between Items 1 & 2) | | $6,560.33 |
| (4) Other Charges | | |
| Optional Insurance | $473.64 | |
| Official Fees | none | |
| Taxes (*not included* in Cash Price) | $293.01 | |
| License, Title & Registration Fees | $ 23.80 | |
| Total Other Charges | | $ 790.45 |
| (5) Unpaid Balance—Amount Financed (Sum of Items 3 & 4) | | $7,350.78 |

The Caskeys' argument as to this alleged violation of the Texas Consumer Credit Code is that the principal balance disclosed in the contract is inaccurate because it includes an amount representing taxes, license, title and registration fees. There is no claim that the taxes and fees as itemized

(d) The aggregate amount, if any, included for insurance if a separate identified charge is made therefor, specifying the type or types and the term of coverage;
(e) *The aggregate amount of official fees, if a separate identified charge is made therefor;*
(f) The principal balance, which is the sum of items (c), (d) and (e);
(g) The amount of the time price differential; and
(h) The sum of items (f) and (g), which is the balance to be paid by the buyer to the seller, the number of installments, the amount of each installment and the due date or period thereof.

on the contract are incorrect; nor is there any claim that the taxes and fees could not be financed.

We hold that the contract did not fail to state the principal balance as required by Article 5069–7.02(6)(f). The principal balance is defined in Article 5069–7.02(6)(f) as the cash sale price less downpayment plus insurance charges plus official fees. Article 5069–7.01(f) expressly permits a seller to include taxes, registration, certificate of title, and license fees in the cash sale price. Since the cash sale price is a component of the principal balance, these fees can be included in computing the principal balance.

With regard to the cross-action filed by Tradewinds Ford Sales, Inc., and Ford Motor Credit Company, the trial court found that the Caskeys were in default in their obligations since they had made no payment under the contract, and at the time of the hearing the amount due and owing Tradewinds and Ford Motor Credit by Don and Ralph Caskey was $8,329.66 plus attorney's fees as provided in the contract. However, recovery was denied on this cross-action because of the violations of the Consumer Credit Code found by the trial court. Since we hold there have been no violations of the Code, Tradewinds and Ford Motor Credit are entitled to recover on their cross-action.

The judgment of the trial court is reversed and judgment rendered that Tradewinds Ford Sales, Inc., and Ford Motor Credit Company recover the sum of $8,329.66 plus $1,249.45 attorney's fees and interest and that Don B. Caksey and Ralph E. Caskey take nothing.