**FORD MOTOR CREDIT COMPANY,**
Appellant,

v.

**Eddie R. BROWN, Appellee.**

No. 5408.

Court of Civil Appeals of Texas,
Eastland.

May 15, 1980.

Rehearing Denied May 21, 1981.

Walter Conrad and Randall A. Hopkins, Baker & Botts, Houston, Fredrick F. Rogers, Jr., Porter, Gonzales & Rogers, Corpus Christi, for appellant.

Marcel S. Greenia, Corpus Christi, for appellee.

DICKENSON, Justice.

The question is whether the summary judgment proof established three violations of the Texas Consumer Credit Code,[1] as found by the trial court.

Eddie R. Brown sued Ford Motor Credit Company for alleged violations of the Texas Consumer Credit Code, supra, in connection with his purchase on January 19, 1976, of a new 1976 Ford pick-up truck from Tradewinds Ford Sales, Inc. of Corpus Christi. Brown made a cash downpayment and financed the balance under a retail install-

---

1. There is no Texas Consumer Credit Code within the meaning of the statutory revision program established pursuant to Tex.Rev.Civ. Stat.Ann. art. 5429b–1 (Vernon Supp.1980). The trial Court actually found violations of Tex. Rev.Civ.Stat.Ann. art. 5069–7.07(1), 5069–8.02 and 5069–14.17 (Vernon Pamphlet Supp.1979). For clarity and convenience we will refer to these statutes as the Texas Consumer Credit Code.

ment contract which was assigned to Ford Motor Credit Company by Tradewinds. The contract was paid in full prior to the time suit was filed. The contract was not accelerated, and no unearned finance charges were actually paid. After granting a partial summary judgment for three "violations" of the Texas Consumer Credit Code, supra, and conducting a nonjury trial on the issue of attorney fees, the trial court rendered judgment for Brown for $9,590.28 plus attorney fees of $2,500.00. Ford Credit appeals. We reverse and remand.

Ford Credit has briefed seven points of error. Eddie Brown did not assign as error the trial court's action in not granting his motion for partial summary judgment on other claimed "violations"; therefore, we will only discuss the three "violations" found by the trial court, which are stated in its judgment as:

> (1) For violation of the Texas Consumer Credit Code, Article 5069–7.07(1) and by contractually allowing Defendant to accelerate the total of payments without deduction or rebate of unearned Finance Charge, as required by law, an amount equal to twice the amount of interest or Time-Price Differential and default charges contracted for, that sum being TWO THOUSAND SIX HUNDRED SIXTY and TWENTY EIGHT/100 DOLLARS ($2,660.28);
>
> (2) For violation of the Texas Consumer Credit Code, Article 5069–8.02 by contracting for interest or Time-Price Differential which are in aggregate in excess of double the total amount of interest or Time-Price Differential authorized by Article 5069–7.03(1), an amount equal to all principal under the retail installment contract, that sum being FOUR THOUSAND TWO HUNDRED SIXTY NINE and SEVENTY TWO/100 DOLLARS ($4,269.72);
>
> (3) For violation of the Texas Consumer Credit Code, Article 5069–14.01(d), by failing to include in the Finance Charge fees which were not incident to the extension of credit and which were not disclosed or individually itemized and for violation of Article 14.17(4) by failing to

disclose or individually itemizing Documentary Fee charge, which was not part of the Finance Charge, an amount equal to twice the amount of interest or Time-Price Differential and default charges contracted for, that sum being TWO THOUSAND SIX HUNDRED SIXTY and TWENTY EIGHT/100 DOLLARS ($2,660.28).

Since these statutes are penal in nature, they should be strictly construed. *Commerce Trust Co. v. Best*, 124 Tex. 583, 80 S.W.2d 942, at 946 (Comm'n App.1935, opinion adopted); *Hight v. Jim Bass Ford, Inc.*, 552 S.W.2d 490, at 491 (Tex.Civ.App.—Austin 1977, writ ref'd n. r. e.).

Ford Credit's first point of error is that the trial court erred in granting judgment for Brown because "the acceleration clause does not contract for, or charge, unearned finance charges." The second point is that the trial court erred in granting judgment for Brown because "the contract does not provide for the collection of interest and/or time-price differential in excess of double the total amount allowed by the Consumer Credit Code." We sustain these two points of error.

We will first discuss the question of whether the installment sales contract contained a prohibited provision as to the acceleration of maturity, within the meaning of Article 5069–7.07(1), supra.

Paragraph 19 of the disputed contract reads in pertinent part as follows:

> Time is the essence of this contract. In the event Buyer defaults in any payment, or fails to obtain or maintain the insurance required hereunder, *or fails to comply with any other provision hereof*, or Seller in good faith believes that the prospect of payment or performance hereunder is impaired, *Seller shall have the right to declare all amounts due or to become due hereunder to be immediately due* . . . . (emphasis added)

Article 5069–7.07, supra, states in pertinent part that:

No retail installment contract or retail charge agreement shall: (1) Provide that the seller or holder may accelerate the maturity of any part or all of the amount owing thereunder unless (a) *the buyer is in default on the performance of any of his obligations* or (b) the Seller or holder in good faith believes that the prospect of payment or performance is impaired. . . . (emphasis added)

Our court recently discussed this question in *Tradewinds Ford Sales, Inc. v. Caskey,* 600 S.W.2d 865 (Tex.Civ.App.—Eastland 1980), and concluded that:

The provision permitting acceleration if the buyer fails to comply with any provision of the contract essentially repeats the language of Article 5069–7.07(1)(a) and thus does not violate the code.

■ We next discuss whether an acceleration after default would permit Ford Credit to collect unearned time-price differential and thereby violate Article 5069–8.02 which reads in pertinent part as follows:

Any person who violates this Subtitle *by contracting for,* charging or receiving interest, time-price differential or other charges which are in the aggregate in excess of double the total amount . . . authorized . . . shall forfeit to the obligor as an additional penalty all principal or principal balance, as well as all interest or time-price differential, and all other charges, and shall pay reasonable attorney's fees actually incurred. . . . (emphasis added)

In *Caskey,* supra, we discussed whether an identical contract provision "contracted for" the payment of unearned or "not yet due" interest or time-price differential. We held there, and we hold here, that the contract does not "contract for" the recovery of unearned finance charges and, therefore, does not violate the Texas Consumer Credit Code. We must presume that the contracting parties intended to comply with the law and that they intended that unearned interest would not be collected. *Smart v. Tower Land and Investment Company,* 597 S.W.2d 333 (1980); *Walker v. Temple Trust Co.,* 124 Tex. 575, 80 S.W.2d

935 (1935); *Spanish Village, Ltd. v. American Mortgage Company,* 586 S.W.2d 195, at 200 (Tex.Civ.App.—Tyler 1979, writ ref'd n. r. e.); Annot., 66 A.L.R.3d 650, at 676 (1975).

Ford Credit's next three points of error attack the trial court's finding of a violation of Chapter 14 of the Texas Consumer Credit Code (Article 5069–14.01 to 14.28), supra. Point 3 insists that the Code does not require itemization of the disputed fees. Point 4 argues that the fees were in fact properly disclosed. Point 5 contends that the trial court erred in granting summary judgment against an assignee of the contract because the "violations" were not apparent on the face of the contract. We sustain these three points.

■ The license registration fee of $5.58, the documentary fee of $25.00, and the state inspection and title fee of $2.75 were in fact disclosed on the "Retail Order" which was signed by Brown on January 16, 1976, and which was attached to his motion for partial summary judgment. Moreover, the seller is permitted to include such fees in the cash sales price. *Tradewinds Ford Sales, Inc. v. Caskey,* supra; Tex.Rev.Civ. Stat.Ann. art. 5069–7.01(f) (Vernon Pamphlet Supp.1979). We also note that Chapter 14 of the Consumer Credit Code (Arts. 5069–14.01 to 14.28) has been repealed. See *National Carloading Corporation v. Phoenix-El Paso Express, Inc.,* 142 Tex. 141, 176 S.W.2d 564, at 570 (Comm'n App.1943, opinion adopted); *A 1962 International Truck v. State,* 503 S.W.2d 614 (Tex.Civ.App.—Eastland 1973, no writ).

We need not discuss the other points of error. The judgment of the trial court is reversed, and the cause is remanded. It is further ordered that this opinion not be published in accordance with Tex.R.Civ.P. 452.

## ON REHEARING

Our original opinion relied upon this court's holdings in *Tradewinds Ford Sales, Inc. v. Caskey,* 600 S.W.2d 865 (Tex.Civ. App.—Eastland 1980), *reversed,* 24 Tex.Sup.

Ct.J. 407 (May 13, 1981). The Supreme Court declared a violation of Tex.Rev.Civ. Stat.Ann. art. 5069–7.07(4) (Vernon Supp. 1980), but it declined to discuss the other alleged violations. In this case there is no finding of a violation of Article 5069–7.-07(4). Being convinced that the other holdings in *Caskey* are correct, we overrule appellee's motion for rehearing. It is further ordered that both opinions now be published in accordance with Tex.R.Civ.P. 452.