Emilio C. GONZALEZ, Petitioner,

v.

GAINAN'S CHEVROLET CITY, INC. and General Motors Acceptance Corporation, Respondents.

No. C–3700.

Supreme Court of Texas.

May 29, 1985.

Hector Gonzalez Law Office, Thomas M. Schumacher, Corpus Christi, for petitioner.

Kleberg, Dyer, Redford & Weil, William J. Chriss, Sorrell, Anderson & Sorrell, Andrew J. Lehrman, Corpus Christi, for respondents.

WALLACE, Justice.

This suit was brought for statutory penalties and attorney's fees pursuant to the Texas Consumer Credit Code, TEX.REV. CIV.STAT.ANN. art. 5069–7.01, *et seq.* (Vernon Supp.1984). The trial court rendered a take nothing judgment. The court of appeals affirmed. 684 S.W.2d 740. We reverse the judgment of the court of appeals. A companion case is *Garcia v. Gainan's Chevrolet City, Inc. and General Motors Acceptance Corp.*, 690 S.W.2d 892 (Tex.1985), decided this same day. The issues presented in both cases are identical; therefore, they will be discussed together in this opinion.

In 1976, Gonzalez contracted with Gainan's for the purchase of a used station wagon. He executed a retail installment contract with Gainan's which was subsequently assigned to General Motors Acceptance Corporation. It is this contract which is at issue before us. Gonzalez contends that various provisions in the contract violated the Texas Consumer Credit Code, TEX.REV.CIV.STAT.ANN. art. 5069–7.01, *et seq.* (Vernon Supp.1984) (the Code). The court of appeals held that none of the provisions in question violated the

Code. We disagree for the reasons set out below and therefore reverse the judgment of the court of appeals.

The Consumer Credit Code contains a lengthy litany of requirements for installment credit contracts in Texas. The list of provisions prohibited by the Code is found in art. 5069–7.07. A creditor has a duty to prepare a contract in accordance with these standards. *Southwestern Investment Co. v. Mannix*, 557 S.W.2d 755 (Tex.1977). Including unlawful provisions in a contract subjects the creditor to statutory penalties pursuant to art. 5069–8.01 of the Code. A finding that only one of the provisions of the contract violates the Code will establish liability.

The threshold issue to be addressed concerns the standard of construction to be given consumer credit contracts. The court of appeals relies upon the cases of *Haley v. Pagan Lewis Motors, Inc.*, 647 S.W.2d 319 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.) and *Grant v. Friendly Chrysler-Plymouth, Inc.*, 612 S.W.2d 667 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.), for the proposition that this type contract must be construed to comport with legality and the parties must be presumed to have intended to obey the law. These cases in turn rely upon the cases of *Nevels v. Harris*, 129 Tex. 190, 102 S.W.2d 1046 (1937) and *Walker v. Temple Trust Co.*, 124 Tex. 575, 80 S.W.2d 935 (1935).

*Walker* and *Nevels* were both concerned with usurious contracts. *Walker* held that a court will adopt a construction which comports with legality if the contract, when taken as a whole, is doubtful or susceptible of more than one reasonable construction. *Nevels* held that parties to a contract are presumed to have intended to obey the law unless the contrary appears.

The court of appeals in this case utilized the above standard to decide whether the questionable provisions were violative of the statute. The court of appeals held that

all ambiguities were to be construed in favor of legality. Therefore, according to the court of appeals, all of the provisions which could reasonably be construed to comply with the statutory requirements were found to be in compliance.

The *Walker* and *Nevels* doctrine of presumed legality, as carried forward and applied to contracts governed by the Consumer Credit Code in the cases of *Haley* and *Grant,* has been erroneously utilized. The *Walker* and *Nevels* cases were decided many years before the enactment of the Consumer Credit Code and were based upon the common law of usury. The Consumer Credit Code contains an express declaration of legislative intent. The declaration of intent includes the following language:

.     .     .     .     .

(3) Credit abuses now existing in our State stem from the fact that many types of credit transactions are not now subject to effective public regulation and control *and the penalties imposed for usury do not provide effective or* workable safeguards in this vital area of economic activity.

(4) ... These unregulated practices bring great social and economic hardship to many citizens of our State. They impose intolerable burdens on those segments of our society which can least afford to bear them—the uneducated, the unsophisticated, the poor and the elderly.

(5) These facts conclusively indicate a need for a comprehensive code of legislation to ... regulate credit sales and services ... and to provide firm and effective penalties for usury and other prohibited practices. Declaration of Legislative Intent, Texas Laws 1967, Chapter 274, Section 1, at 608. Texas Revised Civil Statutes Annotated, Volume 15, pp. 1–2 (Vernon 1971). (Emphasis added).

In *Southwestern Inv. Co. v. Mannix,* 557 S.W.2d 755 (Tex.1977), this court recognized the legislature's intent and recognized the burden it placed upon creditors. This court wrote:

... [t]he legislative pronouncements concerning the form and contents of the retail installment contract must be construed as imposing duties on the seller, since it is the conduct of the seller which the Legislature sought to regulate. 557 S.W.2d at 764. (Emphasis by the court) [quoting from *Mitchell Motors, Inc. v. Bell,* 528 S.W.2d 856 (Tex.Civ.App.—San Antonio 1974, writ ref'd n.r.e.)].

In *Knight v. International Harvester Credit Corp.,* 627 S.W.2d 382, 388 (Tex. 1982), we recognized that "... ambiguities in legislation of this type must be liberally construed, ..." and, in *Jim Walter Homes, Inc. v. Schuenemann,* 668 S.W.2d 324, 332 (Tex.1984), we expressly refused to adopt a stricter construction against a finding of usury under the Consumer Credit Code. We stated that "... we are obliged to construe the Credit Code in a manner that comports with legislative intent and furthers the purposes of the statute." Although we stated that we continue to adhere to the rule "that a contract which is alleged to be usurious on the ground that it calls for the collection of unearned interest is to be construed as complying with the law, if it is reasonably susceptible of such an interpretation," we did not address the question of whether a term in the contract that is not relevant to a determination of usury should enjoy the same standard of construction.

■ We hold that there is no reason to presume the legality of terms and provisions of a contract which are required or prohibited by the Consumer Credit Code and which are not relevant to a finding of usury. We believe that this holding will best comport with the clearly enunciated legislative intent and the previous pronouncements of this court. To the extent that the *Grant* and *Haley* cases and their progeny conflict with this decision, they are disapproved.

We will therefore analyze the first of the contractual provisions at issue. Unlike the

court of appeals, however, we will not presume the legality of the provision.

▮ Gonzalez has alleged four violations of the statute. One of the alleged violations concerns the following provision:

Further, in any such event [default], seller or any sheriff or other officer of the law *may take immediate possession of said property without demand,* including any equipment or accessories thereto; and *for this purpose seller may enter upon the premises where said property may be and remove same.* (Emphasis added).

Article 5069–7.07(3) stated at the time that the contract was signed, that:

No retail installment contract ... shall (3) authorize the seller or holder or other person acting on his behalf to enter upon the buyer's premises unlawfully or to commit any breach of the peace in the repossession of a motor vehicle.

Gainan's contends that this contract provision merely authorizes a legal, peaceable entry to repossess the vehicle. It argues that this requirement of legality is implicit in the contract provision. Gainan's also argues that TEX.BUS. & COM.CODE § 9.503 (Vernon Supp.1984) would control. Section 9.503 states that "in taking possession a secured party may proceed without judicial process if this can be done *without breach of peace* ...." (Emphasis added). Gainan's argues that this requirement of legality was incorporated in the clause and served to limit Gainan's right of repossession.

This argument, however, ignores the requirement in the Code that the contract itself not authorize a trespass. As we stated in *Mannix,* 557 S.W.2d at 763, with regard to another section of the statute:

The presence of such a clause in a retail installment contract would deceive the very individuals the Legislature intended to protect; namely, 'the uneducated, the poor and the elderly' into believing that their creditors could, with the law's blessing, forcibly enter their homes at any time of the day or night and remove their goods without any concern for damages to the debtor's real property. Accordingly, the Legislature must have intended for Article 5069–6.05 to impose a duty upon the creditor not to include such an unconscionable provision in the installment contract.

Gainan's also argues that *Martens v. General Motors Acceptance Corp.,* 584 S.W.2d 941 (Tex.Civ.App.—Dallas 1979, no writ) is authority that such a provision is not violative of the Consumer Credit Code. *Martens* involved an alleged violation of art. 5069–7.07(4), prohibiting a waiver of the buyer's rights of action for illegal acts committed in collection or repossession. The present case involves a violation of art. 5069–7.07(3), which expressly prohibits an authorization of trespass. Although the contract provision in question in *Martens* was virtually identical to the provision at issue here, it was not alleged in that case that the provision violated art. 5069–7.07(3). Therefore the *Martens* court never addressed the question presently before us.

Similarly, the cases cited by the court of appeals are not applicable: *Charlie Hillard, Inc. v. Heath,* 624 S.W.2d 758 (Tex. App.—Fort Worth 1981, no writ); *Dub Shaw Ford, Inc. v. Jackson,* 622 S.W.2d 664 (Tex.App.—Fort Worth 1981, no writ); and *Woolard v. Texas Motors, Inc.,* 616 S.W.2d 706 (Tex.Civ.App.—Fort Worth 1981, no writ). As recognized by the court of appeals below, all of these cases involved contract provisions which included the phrase "with free right of entry." In *Woolard,* the court stated, "had the clause simply read: 'Seller shall have the right to repossess the property wherever the same shall be found' we would be inclined to find an unlawful purpose." 616 S.W.2d at 709. It is unnecessary for us to address the question of whether the "free right of entry" phrase constitutes a term of limitation so as to avoid an authorization of trespass since neither this nor any other similar

phrase is found in the contract provision at issue here.

We hold that the provision of the contract discussed above violates the statute. Our decision in this case does not conflict with our recent decision to refuse, with the notation "no reversible error," the writ in *Hinojosa v. Castellow Chevrolet Oldsmobile, Inc.,* 678 S.W.2d 707 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.). The only point before us in that case concerned whether or not a provision requiring physical damage insurance was printed conspicuously in the contract as mandated by the Code. To the extent that the remainder of the court of appeals' opinion in *Hinojosa* conflicts with this opinion it is disapproved.

Because we hold that the above provision of the contract is violative of art. 5069-7.-07(3), we find it unnecessary to discuss Gonzalez' other points concerning different provisions of the contract. A single violation of the Code will trigger the penalties under § 8.01. *Zapata v. Ford Motor Credit Co.,* 615 S.W.2d 198 (Tex.1981).

We reverse the judgment of the court of appeals and remand this cause to the trial court for a determination of damages and attorney's fees.

McGEE, J., dissents with opinion in which GONZALEZ, J., joins.

McGEE, Justice, dissenting.

Three of our courts of appeals have considered contracts which contain the provision attacked in this cause. *See Gonzalez v. Gainan's Chevrolet City, Inc.,* 684 S.W.2d 740 (Tex.App.—Corpus Christi 1984, writ granted); *Hinojosa v. Castellow Chevrolet Oldsmobile, Inc.,* 678 S.W.2d 707 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.); and *Martens v. General Motors Acceptance Corp.,* 584 S.W.2d 941 (Tex.Civ.App.—Dallas 1979, no writ). All three courts have found the provision to comply with the law. I agree with the unanimous analysis of our courts of appeals. Therefore, I dissent.

The majority opinion is flawed in its analysis of "the threshold issue [of] the standard of construction to be given consumer credit contracts." The majority improperly applies two doctrines of statutory construction and ignores a third, and controlling doctrine. The majority opinion inexplicably overrules a universally accepted contractual construction doctrine in Consumer Credit Code cases. The majority opinion is also flawed in construing the contract signed by Gonzalez so as to find a violation of the Consumer Credit Code, TEX.REV.CIV. STAT.ANN. art. 5069-7.07(3) (Vernon 1984).

## STATUTORY CONSTRUCTION

The majority cites *Knight v. International Harvester Credit Corp.,* 627 S.W.2d 382 (Tex.1982) and *Jim Walter Homes, Inc. v. Schuenemann,* 668 S.W.2d 324 (Tex. 1984) for two propositions applicable to the construction of statutes. First, the majority states that "ambiguities in legislation of this type [the Consumer Credit Code] must be liberally construed." Second, the majority interprets the Code so as to effect the intent of the legislature. I agree with both principles of statutory construction. I disagree, however, with the application of these principles to the facts of this cause. This cause does not involve the ascertainment of legislative intent. There is no assertion that article 5069-7.07(3) is ambiguous. The intent of the legislature is clear. The legislature has mandated that consumer retail contracts shall not contain a term authorizing a breach of the peace in the repossession of a motor vehicle.

The ignored doctrine of statutory construction states that "[s]tatutes imposing penalties are strictly construed, and one who seeks to recover a penalty must bring himself clearly within the terms of the statute." *Hight v. Jim Bass Ford, Inc.,* 552 S.W.2d 490, 491 (Tex.Civ.App.—Austin 1977, writ ref'd n.r.e.). *See e.g., Smart v. Tower Land and Development Co.,* 597 S.W.2d 333, 341 (Tex.1980); *Tenneco Oil*

*Co. v. Padre Drilling Co.*, 453 S.W.2d 814, 818 (Tex.1970); *Van Zandt v. Fort Worth Press*, 359 S.W.2d 893, 895 (Tex.1962); and *Perry v. Luettich*, 132 Tex. 159, 162, 121 S.W.2d 332, 333 (1938). Because the Consumer Credit Code is penal in nature, it must also be strictly construed. *See e.g., Zapata v. Ford Motor Credit Co.*, 615 S.W.2d 198, 199 (Tex.1981); *LaPetina v. Metro Ford Truck Sales, Inc.*, 648 F.2d 283, 288–89 (5th Cir.1981); *Ford Motor Credit v. Gamez*, 617 S.W.2d 720, 722 (Tex. Civ.App.—Eastland 1980, writ ref'd n.r.e.); and *Hight*, 552 S.W.2d 490, 491. We should consider the provision in this cause and the Consumer Credit Code to determine whether the clearly announced intent of the legislature in article 5069–7.07(3) has been clearly abridged.

## CONTRACT CONSTRUCTION

If there are two reasonable interpretations, we must construe the contract provision to comply with the law. *See Jim Walter Homes, Inc. v. Schuenemann*, 668 S.W.2d 324, 335 (Tex.1984) (McGee, J., dissenting) (citing *Haley v. Pagan Lewis Motors, Inc.*, 647 S.W.2d 319, 320 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.)). The majority overrules the doctrine that consumer credit contract provisions are to be "presumed as complying with the law, if it is reasonably susceptible of such an interpretation." I disagree with this holding for two reasons. First, the instrument executed by Gonzalez in this cause is a consumer contract. The fact that it is a retail installment contract subjects it to the provisions of the Consumer Credit Code. However, the instrument remains a contract-subject to accepted rules of contract interpretation. The rule that contracts should be construed to comply with the law is accepted, fundamental, and should be applied to the contract executed by Gonzalez.

Second, the majority improperly distinguishes contracts found to violate the usury provisions of the Consumer Credit Code from violations of other provisions of the

Code. The distinction is illusory at best. The Consumer Credit Code was enacted to provide more effective safeguards and penalties in consumer credit transactions. I can perceive no rational distinction between a provision which authorizes excessive interest and those which authorize unlawful acceleration of the note in violation of article 5069–7.07(1); provide for the waiver of a buyer's cause of action for illegal acts in violation of article 5069–7.07(4); or authorize unlawful entry for purposes of repossession in violation of article 5069–7.07(3). Notably, the legislature has not set out any distinct rules of construction which are to be applied to different sections of the Code. *See* TEX.REV.CIV.STAT.ANN. arts. 5069–6.08 and 5069–7.09 (Vernon 1984). The legislature has not seen fit to make any distinction between violations of the excessive interest provisions of the Code, and any other Code provisions. The rule of construction announced by the majority could certainly have been included by the legislature if accepted rules of contract interpretation were to be applied to only specific sections of the Code. There is no such statement. In the absence of such indicia of legislative intent, this court should not inconsistently apply accepted and well-considered rules in the interpretation of consumer contract provisions merely because different sections of the Code have allegedly been violated.

The majority opinion results in an insupportable contradiction. Contract provisions dealing with interest rates will be presumed to comply with the Consumer Credit Code. Contract provisions dealing with other violations of the Consumer Credit Code will be liberally construed so as to violate the Code. In addition, the Code violation results not from a rule of contract construction, but from a rule of statutory construction which provides that *statutes* shall be liberally construed. An equally insupportable rule of law would result from a holding that individuals driving a red car are presumed to comply with our traffic laws, while others driving a blue car

are presumed to violate the law. Because our traffic laws are to be liberally construed to protect the public, we would presume that the driver of the blue car has violated our traffic laws. Such an analysis makes no sense because it has no foundation in logic. Similarly, in the case at bar, I see neither a rationale to support such a dichotomy nor a benefit which could be derived from it. I would follow a uniform rule in consumer credit contract cases and would hold that "a term in the contract that is not relevant to a determination of usury should enjoy the same standard of construction" as any other term which allegedly violates the Code.

The majority opinion innocuously states that "[t]o the extent that the *Grant* and *Haley* cases and their progeny conflict with this decision, they are disapproved." There is no distinction between a violation of the usury provisions of the Code and any other provision. Therefore, the "progeny" which is disapproved by the majority includes *Schuenemann,* 668 S.W.2d at 335; *Smart v. Tower Land and Investment Co.,* 597 S.W.2d 333, 341 (Tex.1980), and numerous opinions of our courts of appeals. *Carbajal v. Ford Motor Credit Co.,* 658 S.W.2d 281, 284 (Tex.App.—Corpus Christi 1983, no writ); *Ford Motor Credit Co. v. Gamez,* 617 S.W.2d 720, 722 (Tex.App.—Eastland 1981, writ ref'd n.r.e.); *Ford Motor Credit Co. v. Brown,* 617 S.W.2d 271, 273 (Tex. Civ.App.—Eastland 1981, writ ref'd n.r.e.); *Ford Motor Credit Co. v. McDaniel,* 613 S.W.2d 513, 517–18 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.); *Ford Motor Credit Co. v. Long,* 608 S.W.2d 293, 295 (Tex.Civ.App.—Beaumont 1980, writ ref'd n.r.e.); *Tradewinds Ford Sales, Inc. v. Caskey,* 600 S.W.2d 865, 870 (Tex.Civ.App. —Eastland 1980), *rev'd on other grounds, per curiam,* 616 S.W.2d 935 (Tex.1981); and *Martens v. General Motors Acceptance Corp.,* 584 S.W.2d 941, 944 (Tex.Civ. App.—Dallas 1979, no writ). I refuse to disapprove of the rational and well-accepted rule announced in these cases.

### THE GONZALEZ PROVISION

The majority fails to mention some of the pertinent facts of this cause. First, the testimony in the trial court reflects that Gonzalez never defaulted on a payment under the contract. Neither Gainan's nor General Motors Acceptance Corporation ever attempted to repossess the vehicle due to default. Second, the record reflects that the contract was executed by Gonzalez on July 1, 1976 and provided for thirty-six monthly payments. The payments were to begin on August 16, 1976. The last payment was due under the contract on July 16, 1979. Suit was filed on June 30, 1980, one day prior to the running of the applicable statute of limitations. At the institution of the lawsuit, there was not even an effective contract between Gonzalez and Gainan's or General Motors Acceptance Corporation. Indeed, the statement of facts affirmatively reflects that Gonzalez had "paid off the contract to General Motors Acceptance Corporation." Because of these facts, I entertain serious doubts as to whether Gonzalez has satisfied the "case and controversy" requirement set out by this court. *See City of West University Place v. Martin,* 132 Tex. 354, 356, 123 S.W.2d 638, 639 (1939); *State v. Society for Friendless Children,* 130 Tex. 533, 534, 111 S.W.2d 1075, 1076 (1938).

The provision under consideration in this cause is:

> Further, in any such event [default], seller or any sheriff or other officer of the law may take immediate possession of said property without demand, including any equipment or accessories thereto; and for this purpose seller may enter upon the premises where said property may be and remove same.

The majority appears to distinguish *Southwestern Investment Co. v. Mannix,* 557 S.W.2d 755, 758 (Tex.1977) from the present cause. *Mannix* is distinguishable. In *Mannix,* we analyzed the following contract provision: "nothing shall prevent the Secured Party from removing the property from any premises to which same may be attached, upon default or breach," and stated that "SIC could, for example, forcefully

enter Mannix' home." *Id.* at 763. The *Mannix* provision is an authorization for unlawful entry because an unconditional non-preventable right of entry was given. The provision in this cause does not suffer the same infirmity.

The majority properly distinguishes *Charlie Hillard, Inc. v. Heath,* 624 S.W.2d 758 (Tex.App.—Fort Worth 1981, no writ); *Dub Shaw Ford, Inc. v. Jackson,* 622 S.W.2d 664 (Tex.App.—Fort Worth 1981, no writ); and *Woolard v. Texas Motors, Inc.,* 616 S.W.2d 706 (Tex.Civ.App.—Fort Worth 1981, no writ), from the cause before us. Our courts of appeals have held that retail installment contracts containing "free right of entry" language do not violate the Consumer Credit Code, TEX.REV. CIV.STAT.ANN. art. 5069–7.07 (Vernon 1984). *See Heath,* 624 S.W.2d at 760; *Jackson,* 622 S.W.2d at 665; *Woolard,* 616 S.W.2d at 709; and *Caskey,* 600 S.W.2d at 869–70.

The majority seems to place emphasis on favorable language in *Woolard,* 616 S.W.2d at 709, and the absence of similar "free right of entry" language in the contract in this cause in concluding that the present provision violates the Consumer Credit Code. This court has not decided whether "free right of entry" language will obviate a violation of the Code. The presence of such language may in fact distinguish a provision which is violative of the Code from one which is not. However, the absence of "free right of entry" language does not establish the converse proposition that the provision in this cause is violative of the Consumer Credit Code. We must analyze the contract before us not on the basis of language which could be written into it, but on the basis of language actually contained within it.

The language contained in the contract signed by Gonzalez has been considered by our courts of appeals. In *Martens,* the court considered the provision which we consider today. A violation of article 5069–7.07(4) was alleged. The court stated:

We cannot agree that a contract is illegal merely because it is susceptible to an interpretation that violates the Code.... Here, we have a contract provision which can be more reasonably construed to comply with the Code, and we so construe it.... [A]rticle 5069–7.07(4) prohibits only contractual provisions waiving liability for *illegal* acts of the seller. We hold that paragraph six does not violate the Consumer Credit Code because we do not believe this contract would be likely to mislead even an unsophisticated buyer by giving the false impression that he had waived any rights of buyer against seller for seller's illegal acts.

585 S.W.2d at 944. (Emphasis in original). *See Hinojosa,* 678 S.W.2d at 710–11. I agree with the analysis presented in *Martens.* It is more reasonable to conclude that the provision in this cause does not violate article 5069–7.07(3). The provision authorized *entry.* No unconditional right of entry is given. No right to enter illegally is authorized. No clear violation of the Consumer Credit Code has been demonstrated. Therefore, no penalty under article 5069–8.01 should be assessed.

I would affirm the judgment of the court of appeals.

GONZALEZ, J., joins in this dissenting opinion.