MOTOR & INDUSTRIAL FINANCE CORPORATION V.
EMERY H. HUGHES ET UX

No. A-6078. Decided May 8, 1957.
Rehearing overruled June 12, 1957.
(302 S.W. 2d Series 386.)

*Cecil C. Rotsch* and *Louis Scott Wilkerson,* both of Austin, for petitioner, Motor & Industrial Finance Corporation.

*Cofer & Cofer* and *John D. Cofer,* of Austin, for respondents, Hughes.

MR. JUSTICE SMITH delivered the opinion of the Court.

Motor & Industrial Finance Corporation, hereinafter referred to as plaintiff, brought this suit against Mr. and Mrs. Emery H. Hughes, hereinafter referred to as defendants, to recover on three certain promissory notes and for a declaratory judgment as to the validity of such notes and their supporting deeds of trust. Plaintiff alleged that the notes and deeds of trust were executed by defendants while Mr. Hughes was the principal executive officer of the plaintiff corporation, and while both he and Mrs. Hughes were members of its Board of Directors and stockholders in the corporation. The principal property involved in the several deeds of trust was and is the separate estate of the defendant, Mrs. Hughes. Note Number One dated November 16, 1951 was for the principal sum of $99,-900.00, together with interest at the rate of 2% per annum, the interest "in any event" payable quarterly (meaning at each three-month interval) as it accrued. The note provided that the principal was to be due and payable on November 16, 1961 and that all past due interest would bear interest at the rate of 4% per annum and for attorney's fees of 3% of the principal and interest, if placed in the hands of an attorney for collection, or if suit was brought thereon. The deed of trust mortgage recited the indebtedness owing from the defendants to the plaintiff as evidenced by said note. The note was quoted and set forth in said deed of trust mortgage and the deed of trust contained a provision that "whereas the Grantors are justly indebted to the Motor & Industrial Finance Corp., hereinafter called the beneficiary," and the further provision:

"Now, therefore, should the GRANTORS not breach any of the covenants undertaken by them and make punctual payment of said note when demand is made on them for such payment, this deed shall be null and void and of no effect, but if the. GRANTORS make default in the payment of the said notes on demand or fail to perform any of the covenants undertaken by them therein, it shall thereupon or at any time thereafter be the duty of the TRUSTEE or any successor or substitute thereto as hereinafter provided at the request of the BENEFICIARY to enforce this trust * * *."

The deed of trust mortgage described sixty-six lots in Block

B, twenty-one lots in Block C; ten lots in Block D, and five lots in Block E, a total of 102 lots in the Rosemarie Addition to Hearne, Robertson County, Texas. The deed of trust mortgage further provided that the Trustee agreed to release the deed of trust lien "whenever as much as the sum of $900.00 shall be paid by the obligors of said note to the owners or holders of said note for each lot upon which a release is demanded * * *."

Note Number 2 was for the principal sum of $14,000.00 dated March 20, 1952, due and payable November 20, 1962, and provided for the same percentage rates of interest and attorney's fees, and the deed of trust contained the same foreclosure clause as the deed of trust securing Note (1). The deed of trust mortgage of the same date as that of the note conveyed to the trustee for the benefit of plaintiff, as beneficiary, sixteen lots in Block B, in the same addition as described in the deed of trust securing Note (1) and also contained the same clause with reference to releases of lots upon demand, by the payment of $900.00 for each lot sought to be released.

Note (3) was for the principal sum of $9,376.37, dated May 27, 1953, with interest at the rate of 4% per annum, and due and payable: "The interest as it accrues, and the principal, payable: 20% of such total amount each year thereafter until paid in full." It was further provided that all past due interest should bear interest at the rate of 6% per annum, and the attorney's fees provision was the same as that contained in the two other notes herein mentioned.

The deed of trust mortgage executed on the same date as the note conveyed in trust to the trustee for the benefit of the plaintiff certain lots situated in Robertson County, Texas, identified and described as "Commercial Lot No. 1 and Commercial Lot No. 2 * * * in the Rosemarie Addition to Hearne * * *." This deed of trust contained the same foreclosure clause as contained in the deeds of trust previously mentioned, but contained no provision authorizing sale of the lots and release of the lien.

The plaintiffs asked for judgment against the defendants, jointly and severally, for the principal amount of each of said notes, taking into consideration a credit of $900.00 on Note (1), and judgment for interest and attorney's fees, and for the foreclosure of its liens on the lots described in the three deeds of trust, and for a "full and complete declaration with regard to the above described notes and mortgages as alleged herein with respect to the rights, status and legal relations of the parties,

and that the court authorize the foreclosure of each of said mortgages to the extent necessary to satisfy the judgment. * * *." The plaintiff, in the alternative, prayed that if the notes or any part of either of them were not due and payable under the foreclosure clause contained in the deeds of trust, but that the notes and liens were valid obligations against the defendants, then and in that event, the court was requested to order in its judgment that further sales be allowed from time to time as necessary to obtain sufficient funds to satisfy payment of said notes as the same shall become due, and "that the court grant sufficient further relief in law and in equity as is necessary for the plaintiff to collect the full amount due under the terms of said notes and to foreclose said mortgages to the extent and in the manner and at the times necessary to satisfy full payment of said notes * * *."

The defendants admitted execution of the three notes and deeds of trust, and admitted payment of the sum of $900.00 on Note (1). Despite such admissions, the defendants plead several defenses in bar of plaintiff's alleged cause of action. Briefly stated, those pleas were: (1) that the signatures on the three notes and deeds of trust were mere accommodation signatures, and denied that such instruments were executed "so as to create, or intend to create, note and deed of trust obligations in favor of the plaintiff against the defendants;" (2) that the notes and deeds of trust were executed without consideration; (3) that the notes and deeds of trust were executed as a means of effectuating a gift by defendant, Kathrine Hughes, of the proceeds of the sale of her separate property, and that the gift was executory, conditioned that such agreement and willingness to give the money should be realized from the sale of said lots, so long as the defendant, Emery H. Hughes, remained the President and managing officer of the plaintiff-corporation, and until all of the money realized from such sales had actually been donated to the corporation. In this connection, defendants claim the plaintiff violated a controlling condition of such gift on May 10, 1954, by entering an order through its Board of Directors discharging the defendant, Emery H. Hughes, as President and manager of the plaintiff-corporation, and that such action constituted "wholly a failure of consideration upon which said gift and promise was made upon the part of the defendants," and, therefore, not binding upon the defendants; (4) that the defendant, Mrs. Katherine Brady Hughes plead coverture at all times involved here and that she is and was under legal incapacity at the time said instruments were signed by her, and that three notes and deeds of trust were not executed for the

benefit of her separate estate or for necessities for herself and children and that as a married woman she was not bound and was not liable as surety for her husband and not bound in any manner to pledge her separate estate to secure the accommodation notes, and that her separate estate is not liable as a pledge to secure said accommodation notes where the consideration and condition upon which the "gift" that he and she had agreed to make had failed.

The trial court sitting without a jury entered its judgment that plaintiff take nothing as to the notes in the sum of $99,-000.00 and $14,000.00, and declared that they and their respective deeds of trust were void and of no effect as between the the parties. The trial court held as to Note (3), dated May 27, 1953, in the principal amount of $9,376.37, that it constituted a valid and binding obligation against the defendant, Emery H. Hughes; that only 40% thereof was then due and payable, including principal, interest and attorney's fees, and, therefore, entered its judgment against the defendant, Emery H. Hughes, and ordered a foreclosure sale of as much of the security as might be necessary to satisfy the amount then due on Note No. 3. Plaintiff acquiesced in the action of the trial court in sustaining Mrs. Hughes' plea of coverture in so far as her personal liability on the third note was concerned.

The Court of Civil Appeals held that all three notes and their respective deeds of trust are valid and that both defendants are personally liable as makers of notes (1) and (2). That court affirmed the judgment of the trial court as to note (3). Although the Court of Civil Appeals rendered judgment that notes (1) and (2) and the deeds of trust securing their payment were valid and binding obligations of both defendants, the cause was reversed and remanded to the trial court as to notes (1) and (2), the court holding that the plaintiff failed to prove a demand and the refusal of payment of the principal, interest, and attorney's fees and that the foreclosure clauses in the deeds of trust could not be presently enforced, even for purposes of foreclosure only, for the full principal amount of the notes until such conditions precedent were shown. 294 S.W. 2d 182.

Both the plaintiff and defendants have filed applications for writ of error. The plaintiff contends that the foreclosure clauses in question have been effectively activated not only for purposes of present foreclosure but also for purposes of present personal liability for any deficiency which might exist after application of proceeds of sale toward payment of the full principal amounts

of the notes. The defendants contend that notes (1) and (2) were given without consideration and that the Court of Civil Appeals erred in holding to the contrary. They also complain of the holdings to the effect that: first, Mrs. Hughes was personally liable on notes (1) and (2); second, that foreclosure of the deed of trust liens against her separate property was proper, and, third, that there was consideration for all of note (3).

We granted plaintiff's application for writ of error for the reason that it was our tentative view that the Court of Civil Appeals was in error in holding that the plaintiff could not mature the three notes under the provisions of the deeds of trust and in assigning as its reason for such holding that plaintiff had failed to prove demand for and refusal of payment of the three notes, including principal, interest, and attorney's fees. Our study of the entire record has convinced us that the Court of Civil Appeals was correct in holding that both defendants were liable as makers of the notes (1) and (2), and that the court made a correct disposition of the contentions as to note (3).

In the interest of brevity, we shall confine our statement of the evidence to so much thereof as is necessary to render understandable our conclusion that consideration exists and the validity of the notes and deeds of trust has been shown, and that the plea of coverture of Mrs. Hughes should be denied.

The plaintiff, Motor & Industrial Finance Corporation, was organized in 1939 by defendant, Emery H. Hughes, and was created with the power and authority to buy, sell, or deal in notes, bonds, debentures, securities, and other equities. It was managed by subordinates until September 1951, at which time Mr. Hughes assumed full management and continued to develop plans for expansion of the business. The defendants were stockholders in the corporation, and the "Debenture Preference Stock" was issued while Mr. Hughes was manager. As a part of the expansion program, the corporation represented in its prospectus, dated March 1, 1952, that it would buy "discount, secured paper from agents of the Zenith Insurance Company, and from the Zenith County Mutual Fire Insurance Company." In 1945 the charter was amended to permit "preferred stock, which has paid uninterrupted dividends for twenty-eight consecutive quarterly payments or seven straight years." The prospectus listed the assets of the corporation the total net earnings of the management contracts of the insurance companies just mentioned. A prospectus, dated December 1, 1951, listed both

defendants as Directors of the plaintiff-corporation. On October 8, 1951 an application was filed with the Secretary of State to qualify plaintiff's securities under the Securities Act, and the record shows that as early as March 1951 the corporation was practically dormant. The application reflected a deficit of $35,-644.70. The two mutual insurance companies heretofore mentioned were listed as assets of the corporation. At that time Mrs. Hughes owned as her separate property 3500 shares of 6% Debenture Preference Stock valued at $35,000, and the corporation owed among other debts a promissory note in the principal sum of $45,000.00. This note was secured by a deed of trust covering certain lands separately owned by Mrs. Hughes. The record shows that the Texas Securities Commission did not recognize the two insurance companies as assets of the corporation and indicated to the attorney for the plaintiff that the application would not be granted unless the corporation were placed in a solvent condition. The objective was to provide assets of the company to replace the insurance companies and meet the requirements of the Securities Act and thereby increase the value of defendants' stock in the corporation. The enhancement in value of the stock of the corporation was thought to be a natural result especially should the permit be secured. The permit was granted on November 14, 1951. The corporation offered for sale to Texas residents Ten Thousand Shares of Common Stock, No-Par, and Forty Five Thousand Shares of 6% Preference Shares, No-Par. The net proceeds from this financing were to be and were added to the corporation's general funds to be available for working capital and other corporate purposes. As a part of the plan the defendants were to execute and deliver and did so execute and deliver to the corporation the $99,900.00 note involved and the deed of trust. Mrs. Hughes was to deliver 3500 shares of 6% Debenture Preference Stock of Motor & Industrial Finance Corporation (plaintiff) to said corporation and it in turn was to cancel the note in the sum of $45,000 and release the deed of trust securing same. This plan was carried out. The new note and deed of trust was executed. Mrs. Hughes owned shares of stock other than the 3500 shares and was a stockholder in the corporation at all times pertinent to the issues involved in this case. Mr. Hughes testified that the note for $99,900.00 was executed in order to put the plaintiff-corporation in better condition and that he and his wife executed the notes and deed of trust in good faith with the intention that the note and deed of trust should be a part of the assets of the corporation for the benefit of all stockholders. Mrs. Hughes testified that she and her husband discussed the matter fully and that she fully understood the transaction;

that she attended meetings of the Board of Directors in September and November 1951, and that this matter was fully explained and discussed at both meetings; that she examined, read, and fully understood the instruments and signed them of her own free will and accord. The record shows that after the $99,900.00 note was executed by the defendants and after the deeds of trust and notes involved were listed as assets of the corporation, the permit was granted and a considerable number of shares of stock were sold to Texas residents. This case went to trial in August 1955, and Mr. Gammel, who became Manager of the corporation, testified there were two classes of creditors, general creditors and the Debenture Holders, and that the corporation had outstanding 6% Preference Shares, No-Par, of the book value of $162,300.00; that accrued interest on these shares amounted to $12,226.80. He further testified that the shares of common stock No-Par outstanding were carried on the books at a value of $44,608.00. The record shows that at the time of the trial the indebtedness to general creditors amounted to $15,996.15; that the assets, aside from the three notes involved, consisted of notes receivable in the principal sum of $10,364.65, and these notes were classified: $696.00 as "Slow," $7,800.00 "Good or Better," and $1,868.65 "Worthless."

We agree, as the plaintiff contends, that the "6% Debenture Preference Stock" certificate constitute debt obligations and the income thereon paid by the plaintiff to the holders was interest on their face amount. They contain an unqualified obligation to pay both the principal and interest at times certain and regardless of earnings. The stock certificates further provided that "The holders of this stock are preferred over the holders of the common stock of the corporation in the event it is dissolved or liquidated and will be paid 100% of the face value of their stock plus any accumulated and unpaid interest before any distribution of the assets of the corporation will be made to the common stockholders."

■ We cannot agree with the contention of the defendants that no actual obligation was intended or contracted for in the execution of the notes and that the whole transaction was without consideration and void and was for the sole purpose of giving to the corporation the land of Mrs. Hughes, or the proceeds from the sale of said land. The basic purpose for the execution of the notes and deeds of trust was to increase the assets of the corporation. Mrs. Hughes was a substantial stockholder in the corporation. Mr. Hughes was also and was Manager of the corporation at the time these obligations were created. The cor-

poration was organized for the purpose of accumulating and lending money; "to sell and deal in notes, bonds and securities, * * * to subscribe for, purchase, invest in, hold, own, assign, pledge and otherwise deal in and dispose of shares of capital stocks, bonds, mortgages, debentures, notes and other securities, * * *; to borrow money or issue debentures for carrying out any and all purposes * * *." The Legislature provided that corporations of this character were subject to supervision and examination by the Banking Commission of Texas. See Article 1524, Vernon's Annotated Civil Statutes of Texas. The defendants, being stockholders and connected with the plaintiff-corporation as hereinabove related, cannot claim to be accommodation makers without consideration. The notes and deeds of trust were executed for the purpose of enhancing the value of their stock as well as to protect their respective interests in the corporation. See Robertson v. City National Bank, 120 Texas 226, 36 S.W. 2d 481; Otto v. Republic National Bank, Texas Civ. App., 173 S.W. 2d 235; er. ref.; Commercial Investment Company of Uvalde v. Graves, Texas Civ. App., 132 S.W. 2d 439, er. ref.

On the strength of the notes and deeds of trust the assets of the corporation were made more attractive and in the sales campaigns which followed it was represented that the notes involved herein were "current assets" of the corporation. At no time did the defendants file any instruments of record nor did they in any manner manifest to the corporation's other creditors, shareholders, or officers that the notes and the deeds of trust were anything other than real assets of the corporation. Where the maker or makers of notes, as here, are stockholders in the payee, the maker's promise is supported by legal consideration. It matters not that the enhancement in benefits is one to be anticipated. The continuation of the corporation by feeding it new assets gives rise to the hope or chance that the welfare of the maker-stockholder will be materially benefited by improving the assets of the corporation and thereby increasing the value of the maker's individual stock certificates. In 10 C.J.S., No. 151h, it is said:

"The consideration for an instrument or undertaking given by a stockholder or officer for a corporate debt may be one of the types of consideration heretofore discussed, * * * but there are a number of cases which have indicated that, without regard to the existence of such a consideration, the mere incidental benefit to the stockholder or officer by virtue of his relation to, or interest in, the corporation is of itself a sufficient consideration to sustain the instrument. * * *."

In the case of Commercial Investment Company of Uvalde v. Graves, supra, the court said in part:

"* * * But, in view of the fact that he [maker] was an officer, director and stockholder in the Bank he cannot here be considered as an accommodation endorser.

"After a careful consideration of the authorities, we have definitely decided that it is the settled law of this State that where an officer, director and stockholder of a bank signs a note of the bank, either as maker or endorser, with the view of improving the assets of the bank and to enable it to borrow money, he is not in law regarded as an accommodation signer or endorser, and such note is not accommodation paper. The personal interest which such officer, director and stockholder has in seeing the bank secure the money it needs and the benefit which he may ultimately receive by reason of such loan to the bank is in part the consideration for his signature, and he cannot be regarded as an accommodation signer of the note."

We see no sound reason why the principle thus announced in the Graves case, supra, should not with equal force and logic be applied here, particularly where, as here, the corporation is one affected with the public interest.

■ Aside from the reasons heretofore advanced, public policy requires that we hold against the contention of the defendants in this case. A person who, for the accommodation of a corporation such as we have here, executes an instrument which is in form a binding obligation is estopped from thereafter asserting that the instrument should not be enforced because of want of consideration. The defendants in this case left the notes sued upon among the apparent assets of the corporation, permitted the rights of creditors to intervene, and even as late as May 10, 1954 executed what they now denominate an accommodation extension of the notes, and not a cancellation of them on the ground that they lacked consideration from their inception.

Defendants rely on such cases as Whitesboro National Bank v. Wells, 143 Texas 232, 184 S.W. 2d 276; Central National Bank v. Lawson, Texas Civ. App., 27 S.W. 2d 125, and First National Bank of Bowie v. Chandler, Texas Civ. App., 58 S.W. 2d 1056, er. dism. These cases are easily distinguishable from the case at bar. In the Wells case the jury found that Mrs. Wells did not know at the time of executing the notes that it was to be used by the bank as an apparent asset. The jury further

found that Mrs. Wells, the maker of the note, did not know at the time of executing the note that it was used by the bank to cover shortages in the assets of the bank, or that the note was placed among the assets of the bank and relied upon by others interested in the bank. The court simply held that there were no facts sufficient in law authorizing it to invoke the doctrine of estoppel against Mrs. Wells. The bank in that case relied upon the case of Brand, Banking Commissioner v. Korth, 128 Texas 488, 99 S.W. 2d 285. The rule announced in that case was predicated upon the doctrine of estoppel, but the court refused to apply the rule in the Wells case. The court did state that:

"* * * if it were shown in this case that anyone dealing with the bank had been misled through the placing of this accommodation paper in the assets of the bank, and had suffered loss thereby, the doctrine of estoppel would rightly apply here."

The case of Central National Bank v. Lawson, supra, is cited as controlling in the case of First National Bank of Bowie v. Chandler, supra. The Lawson case was discussed by this Court in the case of National Bank of Commerce v. Williams, 125 Texas 619, 84 S.W. 2d 691. This Court pointed out that in the Lawson case, supra, the Court failed to recognize the distinction between a defense of want of consideration and that of failure of consideration. The Court in the Lawson case cited as supporting its holding the case of Smith v. Traders' National Bank, 74 Texas 541, 545, 12 S.W. 2d 221. In the case last mentioned the opinion shows that Smith pleaded failure of consideration, not want of consideration. The defense in the Lawson case was not failure of consideration, but want of consideration. Again, the Lawson case is distinguishable in that there was no showing in that case that the maker of the note was a stockholder in the payee. The opinion in the Lawson case was not approved by the Supreme Court, and this Court expressly overruled one of the other holdings of that case in the Williams case, supra. The Chandler case, supra, is also distinguishable in that the maker of the instrument was not shown to have been interested in the payee.

The Court of Civil Appeals has reversed and remanded this case holding, in effect, that the clauses here in question are of the optional type, and that prior presentment, prior "demand" for the payment of the notes and also a prior "request" were conditions precedent to the exercise by the plaintiff of an option to accelerate the maturity of the notes. We do not reach that question, because we have concluded, for the reasons hereafter

set out that the stipulations merely authorize a foreclosure of the lien. This being true, they are renderd operative by the institution of suit as fully as by a request for the trustee to act.

This brings us to what the plaintiff refers to as the substantive law question on which the parties joined issue in both the trial court and the Court of Civil Appeals. The latter Court having held that the stipulations of the deeds of trust were not self-executing, and had not become operative because there had been no presentment, and no demand for payment or request for the trustee to act, did not reach this substantive law question. It is our view that this question must be decided. The question is: Do the stipulations in the deeds of trust authorize acceleration of maturity of the notes? The plaintiff contends that under the facts in this case, the language of the deeds of trust calls for present enforcement of the in personam liability evidenced by the notes and, at the very least for present enforcement of the in rem liens to the extent of the full principal amount of the notes. The foreclosure clause contained in the three deeds of trust, reads as follows:

"Now, therefore, should the GRANTORS not breach any of the covenants undertaken by them and make punctual payment of said note when demand is made on them for such payment, this deed shall be null and void and of no effect, but if the GRANTORS make default in the payment of the said note on demand or fail to perform any of the covenants undertaken by them therein, it shall thereupon or at any time thereafter be the duty of the TRUSTEE or any successor or substitute thereto as hereinafter provided at the request of the BENEFICIARY to enforce this trust and after publicly advertising the time, place and terms of the sale of all or any part of the above conveyed and described property for at least three consecutive weeks next prior to the day of such sale by posting up written or printed notices thereof in three public places in the county in which such property is situated, one of which shall be the door of the courthouse of such county, or by, after giving such advertised notice in any manner required or permitted by law, to sell such property at the door of the courthouse of the county in which said property is situated at public outcry between the hours of 10:00 A.M. and 4:00 P.M. of the first Tuesday of any month to the highest bidder or bidders for cash and to such purchaser the TRUSTEE or any successor or substitute therefor then acting shall make due conveyance of the property so sold with general warranty, binding the GRANTORS and their heirs, executors or assigns, and out of the money arising from

such sale the TRUSTEE shall pay first all of the expenses for advertising such sale and conveyance, including a commission of five percent (5%) to the TRUSTEE acting, *then to* the *BENEFICIARY or any holder or holders of said note, as hereinbefore set forth, the full amount due on said note, rendering any excess of the proceeds from such sale, if any, to the GRANTORS,* their heirs, executors, administrators or assigns, and such sale shall forever be a bar against the GRANTORS or any person or persons claiming under or through them or either of them."

Defendants contend that, admitting there has been a default in the payment of the interest accrued on the notes, the parties under the stipulations contained in the deeds of trust have not agreed to accelerate the maturity of the notes, and, therefore, the default in the payment of interest does not entitle the plaintiff to mature the principal of the notes. We sustain the contention of defendants on this question.

■ The failure to pay interest accruing on indebtedness evidenced by a note will not cause the note to mature, or give the holder an option to declare the same due, before the maturity date specified therein unless the parties have made an agreement to that effect. See Woessner v. Fly, 63 Texas 198. It is equally well settled that "a contract to thus accelerate the maturity of a debt gives a remedy that is harsh in its nature, *and provision therefor, in order to be effective, should be clear and unequivocal; and, if there is any reasonable doubt as to the meaning of the terms employed, preference should be given to that construction which will avoid the forfeiture and prevent acceleration of the maturity of the debt."* Crumley v. Ramsey, Texas Civ. App., 93 S.W. 2d 191 (er. ref.). An application of these principles to the present case requires a holding that default in the payment of interest does not entitle the plaintiff to mature the principal of the notes.

■ Both the note for $99,900.00 and the deed of trust expressly stipulate that the principal of the indebtedness "shall be *due* on the 16th day of November, 1961," all or any part thereof being payable before "said *due* date" at the option of the makers. Paragraph 6 of the deed of trust is simply a defeasance and foreclosure provision, authorizing the trustee, when requested to do so after default in the payment of the note or in the performance of any of the covenants undertaken therein, to advertise and sell the property, execute a conveyance to the purchaser, pay the expenses and *"the full amount due on said note"*

out of the proceeds of the sale. What we have said in regard to the note for $99,900.00 and the deed of trust securing same is equally applicable to the other notes and deeds of trust. Such a provision authorizing foreclosure of a mortgage for a particular default does not empower the holder of the indebtedness to accelerate the maturity thereof in the event of such default. See Olcott v. Bynum, 17 Wall. 44, 21 L. Ed. 570; Hall v. Jameson, 151 Cal. 616, 91 Pac. 518; 12 L.R.A.N.S. 1190; Trask v. Karrick, 94 Vt. 70, 108 Atl. 846, and McFadden v. May's Landing & E. H. C. R. Co., 49 N.J. Eq. 176, 22 Atl. 932.

■ The defendants contend that, while the stipulations in the deeds of trust empower the trustee to foreclose in the event of default in the payment of interest, the trustee is unauthorized to apply any of the proceeds of the sale toward the payment of the unmatured principal, but may pay the excess, if any, after paying the expenses and the amount of interest due, to the defendants. Our conclusion is that the plaintiff was entitled to file this suit when it did and proceed for the enforcement of its lien for the interest due and accrued at that time, even though the principal of the notes had not matured. In the case of Warren v. Harrold et al., 92 Texas 417, 49 S.W. 364, the Court said in part: "It is well settled law that where there is a debt the principal of which is payable in installments, and which is secured by a mortgage, and default has been made in one installment, the others not being due, the mortgagee may proceed to foreclose for the part that is due, although there may be no stipulation in the contract for maturing the whole debt upon default in the payment of any part. We think, also, that the weight of authority supports the holding that this rule applies as well to installments of interest as to installments of the principal debt itself."

In our case the deed of trust was given to secure the interest as well the the principal. Plaintiff's cause of action accrued upon a default in the payment of the interest. We see nothing in the deeds of trust requiring the plaintiff to await the filing of the suit until the principal of the note secured by the deed of trust had matured. We think Warren v. Harrold, supra, supports our conclusion that the trial court is authorized to enter judgment in favor of the plaintiff for all sums of money in default, including principal, if any, interest, and attorney's fees.

The Court should determine and adjudicate: (1) the amount due on each note, including principal, if any, interest, and attorney's fees, and award the plaintiff a judgment therefor;

(2) the amount owing but not due on each note at the time of the trial; (3) the validity of the lien of the indebtedness evidenced by each note on the property described in the deed of trust securing same; and (4) with respect to the property covered by each deed of trust, whether the same can be sold in parcels without prejudice to the defendants. If the security is susceptible to sale in parcels, the Court should, with respect to each deed of trust separately, order a sale of as much of the security as may be necessary to satisfy the amount then due on the note secured thereby plus the expenses of sale and one-third of the court costs. Any surplus remaining from the proceeds of the sale after the payment of the matured debt, expenses, and costs, shall be paid to the plaintiff as a credit on the amount not due on the note. If the property covered by any deed of trust cannot be sold in parcels without prejudice to the defendants, then the court shall order a sale of the entire property covered by such deed of trust; and if any surplus remains from the proceeds of the sale after the payment of the amount due on the secured debt, the expenses of sale and court costs, it shall be applied, first, to the amount not due on the secured debt, and the balance, if any, shall be paid to the defendants. The plaintiff can at this time be given a personal judgment against defendants only for the amount now due on each note.

We are further of the opinion that the Court should retain control of this case and the title of the land remaining after each sale until the notes secured by the mortgage or deed of trust lien should be satisfied.

The judgments of the trial court and the Court of Civil Appeals are both reversed and the cause is remanded to the trial court for trial in accordance with and not inconsistent with this opinion. The scope of the trial shall be limited to the end that plaintiff may amend its pleadings so as to be allowed in the judgment a present recovery of all sums determined to be in default as of the date of trial, together with a foreclosure of the lien as outlined herein. The costs are adjudged against the respondents.

Opinion delivered May 8, 1957.

Rehearing overruled June 12, 1957.