**Shane GRANT, Appellant,**

v.

**FRIENDLY CHRYSLER–PLYMOUTH, INC. and Chrysler Credit Corporation, Appellees.**

No. 1704.

Court of Civil Appeals of Texas, Corpus Christi.

Feb. 12, 1981.

Rehearing Denied March 5, 1981.

C. M. Henkel, III, Corpus Christi, for appellant.

Rick Rogers, Porter, Gonzalez & Rogers, Corpus Christi, for appellees.

## OPINION

YOUNG, Justice.

This is an appeal by Shane Grant, plaintiff, from a summary judgment rendered in favor of Friendly Chrysler-Plymouth, Inc. and Chrysler Credit Corporation, defendants, regarding a claim filed alleging violations of the Texas Consumer Credit Code, Article 5069–2.01 et seq., Tex.Rev.Civ.Stat. Ann. (Supp.1978) [hereinafter "Credit Code"]. All parties agree that no genuine issue of fact exists. The trial court rendered its summary judgment on the grounds that (1) the acceleration provisions of the signed retail installment contract did not violate the Credit Code and (2) that the principal balance figure was set out correctly in the form required by the Credit Code. We affirm.

On August 25, 1978, appellant Grant purchased a used 1975 Ford F150 pickup truck from appellee Friendly Chrysler-Plymouth, Inc. Financing for the purchase was arranged by Friendly through a "Retail Installment Contract" provided by appellee Chrysler Credit Corporation. The contract was subsequently assigned to Chrysler Credit by Friendly Chrysler-Plymouth.

The contract contained an acceleration provision which provided in part:

"If Buyer defaults in any payment, or fails to comply with any of the terms or conditions of this contract, or fails to procure or maintain the vehicle insurance required hereunder, or a proceeding in bankruptcy, receivership or insolvency shall be instituted by or against Buyer or his property, or if Seller deems the property in danger of misuse or confiscation, Seller shall have the right . . . to declare the unpaid portion of the Total of Payments . . . to be immediately due and payable."

This contract provision, claims appellant, violates the Credit Code, Article 5069–7.07(1) (Supp.1978) which was in effect at the time of this transaction, by allowing acceleration of payments in situations not contemplated by law. Article 5069–7.07(1) provides:

"No retail installment contract or retail charge agreement shall:

(1) Provide that the seller or holder may accelerate the maturity of any part or all of the amount owing thereunder unless (a) the buyer is in default on the performance of any of his obligations or (b) the seller or holder in good faith believes that the prospect of payment or performance is impaired;"

The trial court found that the contract provisions substantially follow the wording of the statute. We agree. If the buyer "fails to comply with any of the terms or conditions of this contract," he surely would also be "in default in the performance of any of his obligations" as that term is used in Article 5069–7.07(1) of the Credit Code. A creditor has the right to contract for acceleration of the date of maturity when the buyer has defaulted his obligation to make timely payments. *Ramo, Inc. v. H. E. English*, 500 S.W.2d 461, 466 (Tex.Sup.1973); *Motor & Industrial Finance Corporation v. H. Hughes*, 157 Tex. 276, 302 S.W.2d 386, 394 (1957).

The language of the clause providing for other means of acceleration tracks the statutory language of Article 5069–7.07(1)(b). The failure to maintain adequate insurance coverage either on the automobile or the

life of the buyer would, as the statute dictates, amount to an impairment of the prospect of payment or performance of the contract. In fact, the Credit Code specifically permits a seller to require the maintenance of credit life or property insurance in Articles 5069–7.06(1) and 7.02(2). Similarly, a proceeding in bankruptcy, receivership, or insolvency, as well as misuse or confiscation, would cause a reasonable person to believe in good faith that the prospect of payment or performance was impaired.

■ It is well established in Texas law that contracting parties are presumed to have intended to obey the law unless the contrary clearly appears. *Nevels v. Harris*, 129 Tex. 190, 102 S.W.2d 1046 (Tex.Sup. 1937). Likewise, where a contract, by its terms, construed as a whole, is susceptible to more than one reasonable construction, the Court must adopt the construction which comports with legality. *Walker v. Temple Trust Co.*, 124 Tex. 575, 80 S.W.2d 935 (1935). This rule is even more appropriate when the Court is construing a penal statute, such as the Credit Code. *Martens v. General Motors Acceptance Corp.*, 584 S.W.2d 941 (Tex.Civ.App.—Dallas 1979, no writ). The challenged provisions of the contract substantially follow the wording of Article 5069–7.01(b) of the Credit Code and, therefore, are in compliance with the law. Appellant's first point of error is overruled.

■ In its second point of error, appellant contends that appellees incorrectly set out the "Principal Balance" in the retail installment contract as that term is used in the Credit Code, Article 5069–7.01(h). The Credit Code specifically sets out by its terms a form to be followed by creditors in disclosing the charges to be paid by the buyer. The "Principal Balance" is defined in Article 5069–7.01(h) to be:

"(h) 'Principal Balance' means the cash sale price of the motor vehicle plus the amounts, if any, included in the retail installment contract, if a separate identified charge is stated therein, for insurance and other benefits and official fees, less the amount of the buyer's down payment, if any, in money or goods or both."

Further, the "Cash Sale Price" is defined in Article 5069–7.01(f) as:

"(f) 'Cash Sale Price' means the price stated in a retail installment contract for which the seller would have sold to the buyer and the buyer would have bought from the seller, the motor vehicle which is the subject matter of such contract if such sale had been a sale for cash. The cash sale price may include any taxes, registration, certificate of title and license fees, and charges for delivering, servicing, repairing, altering or improving the motor vehicle."

Appellant urges this Court to find appellees in violation of the Credit Code because in their Retail Installment Contract they included the amount of $103.74 of sales tax in the "Principal Balance." It is clear from a reading of Article 5069–7.01(f) and (h) that any sales taxes were clearly intended to be part of the "Principal Balance." The failure to include them as part of the "Cash Sale Price" was de minimus and did not contravene the intent of the Credit Code as passed by the Legislature. Point of error number two is overruled.

The judgment of the trial court is affirmed.

NYE, Chief Justice, dissenting.

I respectfully dissent. The majority of this Court has reasoned that no violation of Article 5069–7.07(1) has occurred. This reasoning circumvents the legislative intent and permits the seller and/or the finance company to "deceive the very individuals the legislature intended to protect; namely, the 'uneducated, the unsophisticated, the poor and the elderly' ...." *Southwestern Investment Company v. Mannix*, 557 S.W.2d 755 (Tex.Sup.1977).

The Credit Code, Tex.Rev.Civ.Stat.Ann. art. 5069–2.01 et seq., provides, inter alia, that the seller *may not accelerate* the maturity of the indebtedness unless "the buyer is in default on the performance of any of his obligations." The Code further provides a second ground for acceleration of the maturity of a note, when: the seller or holder in

good faith believes that the prospect of payment or performance is impaired.

My objection stems from the broad and inventive "terms" that the sellers and their finance companies have concocted to permit them to go outside of the Credit Code's base (the two limitations named above) for an excuse to accelerate the maturity of the debt of the buyers. Rather than using the language of the Credit Code, which states that if the buyer is in default in the performance of "any of his obligations", the seller and/or the finance company, in the case before us, changed the Credit Code language to say if the buyer "fails to comply with any of the terms or conditions of this contract", the seller may accelerate, etc. In the "fine print", the seller and/or finance company had a list of "thou shalt nots", which included the taking of the vehicle outside of the county without their permission, or transferring any ownership of the vehicle to any other party, etc. In one of these situations, if a newly married person, for instance, should transfer his interest in his Chrysler Credit Corporation financed car to his wife after marriage without the Company's consent, he would be violating the "extra terms" of the contract and the finance company could accelerate the maturity and foreclose on the security. Many other examples could be fashioned by the sellers or their assigns if this opinion was permitted to stand and be the law.

The majority reasons that the courts should not penalize the seller or the finance company for their inventiveness in fashioning stricter terms than the Code provides because the courts can take each contract on a "case-by-case approach" after the acceleration has occurred and then make the buyer "*prove*" that the seller and/or the finance company did not act in "good faith." They reason that if a court can rearrange any of the inventiveness of the finance company's language to comport with legality, we should do so and uphold the finance company as against the buyer. This shift of the burden of proof was not intended by the legislature. The Code was enacted to prohibit certain actions by the sellers from ever happening, rather than trying to rectify the sellers' actions after the fact.

This Credit Code was the result of consumer legislation that was supposed to restrict the freedom of the seller from fashioning his own definition of default that might give rise to acceleration. The legislation limited the opportunity for acceleration to the two essential conditions: default of the obligations (i. e., of the note and mortgage) or the good faith belief (on the part of the seller and/or finance company) that the prospect of payment or performance had been impaired. The majority has legislated beyond these limitations.

The majority, in its opinion, also endorses the Federal court's approach (*Sheppard Federal Credit Union v. Palmer*, 408 F.2d 1369 [5th Cir. 1969]) that broad and inventive acceleration clauses are "all right" unless the buyer *can prove* that the seller and/or the finance company fabricated such clauses in *bad faith*. Not only does such approach emasculate the legislative intent, but it is, in my opinion, against the public policy of this State.

The approach that the majority has taken is not unlike that which was condemned by our Texas Supreme Court in *Southwestern Inv. Co. v. Mannix*, supra. I would reverse the judgment of the trial court as it pertains to Art. 5069–7.07(1).

ON MOTION FOR REHEARING

NYE, Chief Justice, dissenting.

I respectfully dissent for the reasons set forth in the original opinion. Accordingly, I would grant the motion for rehearing and reverse the judgment of the trial court as it pertains to Art. 5069–7.07(1).