Thomas N. HINOJOSA, Appellant,

v.

**CASTELLOW CHEVROLET OLDSMOBILE, INC. and GMAC, Appellees.**

No. 13–83–363–CV.

Court of Appeals of Texas, Corpus Christi.

Sept. 6, 1984.

Rehearing Denied Oct. 4, 1984.

Thomas M. Schumacher, Hector Gonzalez Law Office, Corpus Christi, for appellant.

Andrew J. Lehrman, Sorrell, Anderson & Sorrell, William Chriss, Kleberg, Dyer, Redford & Weil, Corpus Christi, for appellees.

Before NYE, C.J., and KENNEDY and SEERDEN, JJ.

## OPINION

KENNEDY, Justice.

Appellant brought suit alleging violations of the Credit Code. After a trial to the court, judgment was entered that appellant take nothing.

The facts are undisputed. Appellant purchased a new pickup truck from appellee, Castellow Chevrolet (Castellow). Appellant signed a retail installment contract providing that the purchase price would be paid in 36 monthly payments, that a finance charge would be added to the purchase price and that other terms and conditions would apply. The contract was assigned to appellee, General Motors Acceptance Corporation (G.M.A.C.). The vehicle was purchased for personal use and not for resale. It is undisputed that this transaction was a retail installment transaction subject to the provisions of the Credit Code. Tex.Rev.Civ.Stat.Ann. art. 5069–2.-01 et seq. (Vernon 1971). Findings of fact and conclusions of law were filed.

Appellant's first through fifth points of error complain that the trial court erred in holding that the retail installment contract did not violate the Credit Code.

By the first point of error, the appellant asserts that the retail installment contract was in violation of TEX.REV.CIV.STAT. ANN. art. 5069–7.07(6) (Vernon Supp.1984) which reads:

No retail installment contract ... shall: (6) Provide that the buyer agrees not to assert against the seller or holder of (sic)[1] any claim or defense arising out of the sale ...

Paragraph 7(c) of the retail installment contract provides:

7. It is mutually understood and agreed that:

(c) except where the seller is also the manufacturer of said property, buyer will not assert against any subsequent holder as assignee of this contract any claim or defense which the buyer may have against the manufacturer or a seller other than the seller of said property obtained pursuant hereto.

Appellees point out that the contract in question contained this provision in Paragraph 10:

Any provision of this contract prohibited by law by any state shall as to such state be ineffective to the extent of such prohibition without invalidating the remaining provisions of the contract.

A seller has a duty to prepare a contract in accordance with the standards established by the Credit Code, and a general disclaimer provision cannot save an otherwise illegal provision in a contract. *Tradewinds Ford Sales, Inc. v. Paiz*, 662 S.W.2d 164 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.).

In reviewing a contract as a whole, we are obligated to adopt a rule of construction that comports with legality and compliance. *Haley v. Pagan-Lewis Motors, Inc.*, 647 S.W.2d 319 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.); *Grant v. Friendly Chrysler-Plymouth,*

---

[1] The "of" is apparently surplusage and should be ignored. *Knight v. International Harvester*

*Credit Corp.* 627 S.W.2d 382, 385 (Tex.1982).

*Inc.,* 612 S.W.2d 667 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.). Furthermore, contracting parties are presumed to have intended to obey the law unless the contrary clearly appears from the contract; and courts must presume the parties intended an interpretation of the terms that is legal and complies with the Code. Directly above appellant's signature on the contract, in bold print, is the following language:

### NOTICE [2]

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF.

We find that a reasonable construction of the contract as a whole grants the buyer the right to assert against the seller, as well as any holder of the retail installment contract, all claims and defenses arising out of the sale. We further hold that the provision on the back of the contract does not limit the buyer to the contrary. *Flores v. Charlie Thomas Courtesy Ford, Inc.,* 669 S.W.2d 165 (Tex.App.—Corpus Christi 1984, no writ); *see Haley,* 647 S.W.2d at 320; *see also Lundquist Buick-Opel, Inc. v. Wikoff,* 659 S.W.2d 466 (Tex.App.—Corpus Christi 1983, no writ); *Ford Motor Credit Co. v. Gamez,* 617 S.W.2d 720 (Tex. Civ.App.—Eastland 1980, writ ref'd n.r.e.). Appellant's first point of error is overruled.

Appellant's second point of error complains that the contract contains a provision which authorizes appellees to unlawfully enter upon appellant's premises to repossess the vehicle in case of default.

---

**2.** This provision is inserted in retail contracts pursuant to 16 C.F.R. § 433.2 (1983).

**3.** Effective August 27, 1979, this provision reads:
(3) Authorize the seller or holder or other person acting on his behalf to enter upon the buyer's premises in violation of Chapter 9,

TEX.REV.CIV.STAT.ANN. art. 5069-7.-07(3), at the time that the contract was signed, read as follows:

No retail installment contract ... shall:
(3) Authorize the seller or holder or other person acting on his behalf to enter upon the buyer's premises unlawfully or to commit any breach of the peace in the repossession of a motor vehicle.[3]

Paragraph six of the "Additional Terms" located on the backside of the retail installment contract signed by appellant contained this language:

Further in any such event, [ (default) ] seller or any sheriff or other officer of the law may take immediate possession of said property without demand, ... and for this purpose seller may enter upon the premises where said property may be and remove same.

Appellant asserts that this provision would give appellee the right to trespass upon private property, open a locked garage and take the vehicle. Appellee replies that the above-quoted contract language merely regulates the bailor-bailee relationship and defines the right of the parties, citing the Rights of Secured Parties under TEX.BUS. & COM.CODE § 9.503 (Vernon Supp.1984), which reads:

Unless otherwise agreed, a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of peace or may proceed by action.

Although the contract now before us was executed prior to the time art. 5069-7.07 was amended to specifically refer to Chapter 9 of the Texas Business and Commerce Code, we are guided by § 9.503 in addressing appellant's point of error.

---

Business & Commerce Code, as amended, or to commit any breach of the peace in the repossession of a motor vehicle;
TEX.REV.CIV.STAT.ANN. art. 5069-7.07 (Vernon Supp.1984).

In *Martens v. General Motors Acceptance Corp.*, 584 S.W.2d 941 (Tex.Civ.App. —Dallas 1979, no writ), the Court, interpreting an identical GMAC contract provision, found that it did not authorize illegal acts in repossession of the vehicle on the part of vendor, and the language was understood not to allow a breach of the peace in the vehicle.

The Court stated:

The provision that '[s]eller may enter upon the premises where said property may be and remove same,' does not waive any rights of the buyer. If a breach of peace is committed by the seller, the buyer has an action in tort.

*Martens*, 584 S.W.2d at 943.

The Court further set forth:

We conclude that even if the Code is construed most strongly in favor of the consumer, it does not invalidate any provision of the GMAC contract. No provision of that contract expressly waives any of the buyer's rights of action for illegal acts of the seller during repossession. It is unclear what acts of the seller are intended to be covered by the term "illegal acts." Even if this expression is taken to include negligent acts, this contract cannot reasonably be construed to waive liability for seller's negligent acts. To be effective for that purpose, an express waiver of liability for negligence would be required.

*Martens*, 584 S.W.2d at 944. While *Martens* pertained to an alleged violation of art. 5069–7.07(4), the reasoning set forth therein is just as sound when applied to the issues raised by appellant today.

Again, it must be understood that contracting parties are presumed to have intended to obey the law unless the contrary clearly appears from the contract. Courts must presume that the parties intended an interpretation of the terms that is legal and complies with the Code; and, courts, in reviewing the contract as a whole, are obligated to adopt a rule of construction which comports with legality and compliance. *Haley*, 647 S.W.2d at 319.

In our case, the language of the additional terms of the installment contract did not permit the seller or his assignee to break the law in repossession of a vehicle warranted because of a buyer's failure to make payments. *See Ormsby v. Parker Square Bank*, 610 S.W.2d 246 (Tex.Civ. App.—Fort Worth 1980, no writ), where a contract authorizing a "right to peaceably enter" was approved. *See also Charlie Hillard, Inc. v. Heath*, 624 S.W.2d 758 (Tex.App.—Fort Worth 1981, no writ); *Dub Shaw Ford, Inc. v. Jackson*, 622 S.W.2d 664 (Tex.App.—Fort Worth 1981, no writ); and *Woolard v. Texas Motors, Inc.*, 616 S.W.2d 706 (Tex.Civ.App.—Fort Worth 1981, no writ), where language authorizing repossession with "free right-of-entry" has been interpreted by Texas Courts not to mean that seller is given a contractual right to break the law by allowing trespass. The Courts read such language as a limitation; that is, recognizing that public policy favors peaceful, non-trespass repossessions, would allow seller to repossess property only where he found free right-of-entry. Appellant's second point of error is overruled.

Appellant's third point of error complains that the trial court erred in holding that the retail installment contract did not violate the Credit Code in that the contract contained a provision allowing appellee to accelerate the note under circumstances not permitted by the Code.

The installment contract contained this provision in Paragraph 6:

6. If buyer defaults in any payment due hereunder, ... or in the event either that the buyer fails for any reason to comply with paragraph 3(a) above or that said required physical damage insurance *(whether procured by the seller or by the buyer)* is cancelled by the insurer prior to expiration thereof, the seller shall have the right, at his or its election, to declare the unpaid instalments [sic] hereunder, less the unearned finance charge computed as provided herein, together with any amount for which the buyer shall have become obligated here-

under, to be immediately due and payable.... (Emphasis added.)

Appellant asserts that this provision is in violation of TEX.REV.CIV.STAT.ANN. art. 5069–7.07(1) (Vernon Supp.1984) which reads:

No retail installment contract ... shall: (1) Provide that the seller or holder may accelerate the maturity of any part or all of the amount owing thereunder unless (a) the buyer is in default on the performance of any of his obligations or (b) the seller or holder in good faith believes that the prospect of payment or performance is impaired.

Appellant asserts that the holder of the contract could accelerate the note "if the insurance company cancelled the insurance by mistake," or "because it was going out of business" or "if the insurance was cancelled by the insurer because (appellee) failed to pay the premium which appellant had prepaid to (appellee)." Appellant is specifically complaining of the fact that, under the language of paragraph 6, appellant's note could be accelerated without a default in performance of appellant's obligations.

In *Grant v. Friendly Chrysler-Plymouth, Inc.*, 612 S.W.2d 667 (Tex.Civ. App.—Corpus Christi 1981, writ ref'd n.r. e.), we held that so long as the contract tracks the statutory language of Article 5069–7.07(1), then the provision does not violate that section. The contract then merely defines the instances which would constitute cause for a good faith belief that the prospect of payment or performance is impaired. In *Grant*, we held that the inclusion of the following terms did not violate Sec. 7.07(1):

1. Default in the payments;
2. failure to comply with any of the terms or conditions of the contract;
3. failure to procure or maintain the vehicle insurance required by the contract;
4. institution by or against the buyer of a proceeding in bankruptcy, receivership or insolvency;

5. A belief by the seller that the property is in danger of misuse or confiscation.

In *Lundquist Buick-Opel, Inc. v. Wikoff*, 659 S.W.2d 466 (Tex.App.—Corpus Christi 1983, no writ), we stated that so long as the events of default are essentially the same as a default in performance of any of buyer's obligations, the provision does not violate Article 5069–7.07(1).

In *Grant*, 612 S.W.2d at 668–669, we set forth that:

If the buyer "fails to comply with any of the terms or conditions of this contract," he surely would also be "in default in the performance of any of his obligations" as that term is used in Article 5069–7.07(1) of the Credit Code. A creditor has the right to contract for acceleration of the date of maturity when the buyer has defaulted his obligation to make timely payments. *Ramo, Inc. v. H. E. English*, 500 S.W.2d 461, 466 (Tex.Sup.1973); *Motor & Industrial Finance Corporation v. H. Hughes*, 157 Tex. 276, 302 S.W.2d 386, 394 (1957).

The language of the clause provision for other means of acceleration tracks the statutory language of Article 5069–7.07(1)(b). *The failure to maintain adequate insurance coverage* either *on the automobile* or the life of the buyer *would, as the statute dictates, amount to an impairment of the prospect of payment or performance of the contract.* In fact, the Credit Code specifically permits a seller to require the maintenance of credit life or property insurance in Articles 5069–7.06(1) and 7.02(2). Similarly, a proceeding in bankruptcy, receivership, or insolvency, as well as misuse or confiscation, would *cause a reasonable person to believe in good faith that the prospect of payment or performance was impaired.* [Emphasis added.]

The question as to whether the seller or holder "in good faith" believes that the prospect of payment or performance is impaired can only be decided on a case-by-case basis and is not raised by the record.

*See Wikoff,* 659 S.W.2d at 469. Appellant's third point of error is overruled.

Appellant's fourth point of error complains that the trial court erred in holding that the installment contract did not violate Article 5069–7.06(3) because the contract failed to clearly and conspicuously state that insurance was required.

Article 5069–7.06(3), in pertinent part, provides:

(3) When insurance is required in connection with such a contract or agreement made under this Chapter, the seller or holder shall furnish the borrower a statement which shall clearly and conspicuously state that insurance is required in connection with the contract . . .

On the reverse side of the contract, in the smallest type size used in the contract, under the heading *Additional Terms,* we find this provision:

3. (a) In the event either . . . (2) that said obligation does not include a charge for required physical damage insurance, buyer shall furnish satisfactory evidence that said property continues to be effectively and adequately covered by such insurance at all times during the term of this contract.

In addition, on the front side, the following appears near the top of the page:

4. OTHER CHARGES

\*A. Cost of required physical damage insurance. . . . \$–0– And, in the middle of the page, we find a box which, in pertinent part has the following:

Covering Accidental Physical Damage to the car as outlined below

Insurance Company _____

_____N/A_____

■ The trial court filed findings of fact which include the following:

A. The Retail Installment Contract admitted into evidence clearly and conspicuously disclosed and stated that physical damage insurance was required in connection with the contract.

The Court of Appeals will uphold the trial court's findings unless they are manifestly erroneous and without any evidence to support them or are so against the great weight and preponderance as to be manifestly wrong. *De la Fuente v. Home Savings Association,* 669 S.W.2d 137 (Tex. App.—Corpus Christi 1984, no writ). We find, as a matter of law, that the above-quoted contractual provision is not clear and conspicuous.

■ Article 5069–7.01, et seq. does not contain a definition of "conspicuous"; however, TEX.BUS. & COM.CODE § 1.201(10) contains this definition:

(10) "Conspicuous": A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals . . . is conspicuous. Language in the body of a form is "conspicuous" if it is in larger or other contrasting type or color. Whether a term or clause is "conspicuous" or not is for decision by the court.

A provision buried in a mass of fine print on the reverse side of a contract is not "conspicuous." *See Smith v. Chapman,* 614 F.2d 968 (5th Cir.1980) (interpreting Texas law). This is the very situation that the legislature was trying to correct when it enacted Article 5069–7.07(3).

In *Gonzalez v. Gainan's Chevrolet City, Inc., and General Motors Acceptance Corporation,* No. 13–83–107–CV (Tex.App.—Corpus Christi, August 31, 1984, no writ) (not yet reported), we held that similar contract provisions, when coupled with a second form clearly and conspicuously containing the requisite language that physical damage insurance was required under the contract, would comply with the statute. However, in the case now before us, there is nothing in the record to establish that a second form, meeting the Code's requirements, was executed as part of the retail installment contract. Appellant's fourth point of error is sustained.

Appellant's fifth and sixth points of error complain that the trial court erred in holding that the appellees substantially com-

plied with all disclosure requirements required by the Credit Code and that any violation was de minimus.

The trial court filed the following conclusions of law:

2. That the Retail Installment Contract admitted into evidence substantially complies with all disclosure requirements required by Art. 5069–7.01, et seq.

3. That if there is a violation of the Retail Installment Contract admitted into evidence, it is de minimis [sic] or so small and insignificant as not to constitute a violation.

An appellate court is not bound by the trial court's conclusions of law. *Muller v. Nelson, Sherrod & Carter,* 563 S.W.2d 697 (Tex.Civ.App.—Fort Worth 1978, no writ). This Court has held that a $2.00 overcharge and a $2.50 overcharge are de minimus. *Lundquist Buick-Opel, Inc. v. Wikoff,* 659 S.W.2d 466, 468; *Wayne Strand Pontiac-GMC v. Molina,* 653 S.W.2d 45 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.). In *Hight v. Jim Bass Ford, Inc.,* 552 S.W.2d 490 (Tex.Civ.App.—Austin 1977, writ ref'd n.r.e.), it was held that the use of ten-point type when ten-point *bold* type was required was de minimus. However, the de minimus rule should not be applied where a provision required to be conspicuous is not. We therefore find that the contract did not substantially comply with the Credit Code. Appellant's fifth and sixth points of error are sustained.

Appellant's seventh point of error complains that the trial court erred in holding that the violations of the Credit Code were the result of bona fide error on the part of appellees. Bona fide error is a defense to a violation of the Credit Code.

(f) A person may not be held liable in any action brought under this Article for a violation of this Subtitle ... if such person shows by a preponderance of evidence that (1) the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adopted to avoid such violation ...

TEX.REV.CIV.STAT.ANN. art. 5069–8.-01(f) (Vernon Supp.1984).[4] The burden of proof that a bona fide error occurred is on appellees. *See McDonald v. Savoy,* 501 S.W.2d 400 (Tex.Civ.App.—San Antonio 1973, no writ); TEX.REV.CIV.STAT.ANN. art. 5069–8.01(f) (Vernon Supp.1984). In order to take advantage of the bona fide error defense, appellees must show that procedures have been adopted which are designed to avoid the error which actually occurred. *First Federal Savings and Loan Association of San Antonio v. Bustamante,* 609 S.W.2d 845 (Tex.Civ.App.—San Antonio 1980, no writ). There is no evidence to support a finding that appellees had adopted procedures to avoid the violations that occurred or that the violations were in any way inadvertent. The offending provisions were a part of a form contract. *See Smith v. Chapman,* 436 F.Supp. 58 (D.C.1977) *affirmed,* 614 F.2d 968.

Appellant's seventh point of error is sustained.

Appellant's eighth point of error complains that the trial court erred in holding that appellant did not meet his burden of proving that the retail installment contract had been assigned to appellee GMAC.

Appellee's First Amended Original Answer, the pleading on which trial was had, contained this statement:

5. Defendants are the holders of the consumer credit contract which evidenced the purchase of the goods in question.

Admissions in trial pleadings are regarded as judicial admissions in the case in which that pleading is filed, require no proof of the admitted fact and authorize the introduction of no evidence to the contrary.

---

4. Although the contract was signed before the effective date of August 1, 1977, the amendatory act provided:

Sec. 3. The provisions of this Act shall become effective at midnight on August 31, 1977, and shall apply to all transactions entered into prior to such date ...

*Houston First American Savings v. Musick,* 650 S.W.2d 764 (Tex.1983); *De la Fuente v. Home Savings Association,* 669 S.W.2d 137 (Tex.App.—Corpus Christi 1983, no writ). It is not necessary for either party to prove facts which are distinctly alleged by the adverse party. *Taylor v. Catalon,* 166 S.W.2d 102 (Tex.1942); *De la Fuente,* 669 S.W.2d at 145. Therefore, it was not necessary for plaintiff to introduce evidence that GMAC was the holder of the contract, and the trial court erred in its holding. Furthermore, both the seller and the holder have a duty to ensure that retail installment contracts conform to the statutory requirements of the code. *Horn v. Nationwide Financial Corp.,* 574 S.W.2d . 218 (Tex.Civ.App.—San Antonio 1978, writ ref'd n.r.e.).

Appellant's eighth point of error is sustained.

We find that appellees are liable under the Texas Consumer Credit Code as persons who violate the Code "by (ii) committing any act or practice prohibited" by the Code. TEX.REV.CIV.STAT.ANN. art. 5069–8.01(b) (Vernon Supp.1984). Appellees are, therefore, liable for an amount equal to twice the time price differential contracted for, not to exceed $2,000 and reasonable attorney's fees. TEX.REV. CIV.STAT.ANN. art. 5069–8.01(b). We find that the finance charge is $881.87, and that attorney's fees were stipulated as $500 for the trial, $1,000 if appealed to this Court, $500 if writ of error is filed in the Supreme Court, and $500 if writ of error is granted. We, therefore, REVERSE and RENDER judgment in favor of the appellant in the amount of $4,263.74, with a remittitur of $1,000 if no writ of error is filed or a remittitur of $500 if a writ of error is filed and denied.