WESTERN STEEL
COMPANY, Appellant,

v.

COAST INVESTMENT CORPORATION
d/b/a the Hawkins Service
Company, Appellee.

No. 13–87–446–CV.

Court of Appeals of Texas,
Corpus Christi.

Oct. 13, 1988.

Rehearing Denied Nov. 10, 1988.

William Robert Anderson, III, Corpus Christi, for appellant.

Mark H. Giles, Corpus Christi, for appellee.

Before NYE, C.J., and KENNEDY and DORSEY, JJ.

## OPINION

NYE, Chief Justice.

Western Steel Company, appellant, brought suit against Hawkins Service Company, appellee, for the recovery of extra construction charges allegedly caused by Hawkins' failure to comply with plans and specifications and failing to perform in a good and workmanlike manner. Hawkins filed a counterclaim alleging breach of contract on a subsequent job. After a bench trial, the trial court determined that Western should take nothing by its suit and awarded Hawkins $3,265.00 and attorney's fees on its counterclaim. Western appeals by 18 points of error. We affirm.

Western's suit complained about Hawkins' performance on the Pagan–Lewis job. Western was the general contractor; Hawkins was the air conditioning subcontractor. Upon completion of the Pagan–Lewis job, Hawkins was paid in full for its services. However, on a subsequent job, the Ramos job, Western withheld $3,265.00 from Hawkins, claiming Hawkins owed that amount for cost overruns on the Pagan–Lewis job. Hawkins sought to have a mechanics and materialmen's lien on the Ramos job for the amount due from Western and filed a counter-claim for breach of contract on the Ramos job.

By points seven through fourteen, appellant complains that the following findings were against the great weight and preponderance of the evidence: that changes made in the course of the Pagan–Lewis job were at the instance and request of Western; that the $6,632.11 in extra construction charges were charges Western incurred and was legally responsible for; that the equipment, its location and instal-

lation were in accordance with the agreement with Western and the instructions of its authorized representative; that Western accepted the job as performed. By point of error four, appellant contends the trial court erred in not finding that the cost overruns in the shop area of the Pagan–Lewis job were caused by Hawkins' failure to follow plans and specifications.

The Court of Appeals will uphold the trial court's findings unless they are manifestly erroneous and without any evidence to support them or are so against the great weight and preponderance as to be manifestly wrong. *Hinojosa v. Castellow Chevrolet Oldsmobile, Inc.*, 678 S.W.2d 707, 713 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.).

John Hawkins, president of Hawkins Company, testified that initially they agreed to use a ten-ton air conditioning system for the showroom, but at Western's request they agreed to reduce the size to an eight-ton system. Hawkins said that when the eight-ton system was being installed, Ken Myska, a Western representative, determined the system was too large for the space. Therefore, at the request of Myska, Hawkins installed two four-ton systems. Hawkins testified that in the bid he agreed to use 460 voltage equipment on everything but the showroom and the window unit. He said the changes in the voltage of the equipment and the location of the equipment were made at the request of Myska. He said Myska instructed them to use lower voltage equipment, and that Myska was aware the change would require reworking the electrical system. He said all the changes were made at Western's request, including the voltage change in the shop area. However, he said he had no specific recollection regarding the voltage changes besides those made in the showroom. Hawkins testified that he never signed Western's purchase order because it specified incorrect voltage for the equipment. He testified that upon completion of the job they were paid in full and that it was a number of months later before Western contacted him telling him they expected Hawkins to pay the bills to cover the electrical changes.

George Gaines, the president of Western Steel Company, testified that both the initial proposal by Hawkins and the purchase order, specified that the equipment to be furnished was to run on the higher volt system. Yet the equipment that was installed by Hawkins included both the higher voltage and lower voltage equipment. He said the shop area and the showroom area required extra electrical work to convert the system to the higher voltage.

Gaines testified that during the course of the job, the location and size of the air conditioning equipment had to be changed from the original bid at the request of Western. He testified that Hawkins was working with Ken Myska who had authority to make changes in the size of the system.

He agreed that the changing of the location of the equipment was due by Western and that Hawkins simply followed the instructions of changing things to meet Western's requirements. He said they did not bill Hawkins for the electrical work necessitated by the voltage change until December 12, 1983, 6 or 7 months after paying the electricians because they had not yet settled up with Mr. Pagan. He said they lost $15,000.00 on the job because the air conditioning was not satisfactory. He did agree that he directed Hawkins to reduce the price of everything and go to a cheaper approach to try to meet the lowest price and if they negotiated, to try to get together on a price that would meet the budget.

Coonrod Electric Company was the electrical contractor on the job. Clifton Coonrod, president of Coonrod Electric Company, testified that the showroom and shop area were initially wired to have 480 volt power. He said that the air conditioning units that were installed were 208 volt units. Western Steel contracted with them to change the wiring to 208 volt power. He testified that he did not know the reason why the 208 volt units were installed.

■ While the evidence presented to the trial court was sharply conflicting, it was within the trial court's province to weigh

the credibility of the witnesses and determine the weight to be given their testimony. After reviewing all the evidence we find the trial court's findings were not contrary to the overwhelming weight of the evidence so as to be clearly wrong or unjust. Therefore, appellant's points of error four and seven through fourteen are overruled.

By points of error five and six Western contends again that the trial court's finding that the work performed by Hawkins on the Pagan–Lewis job was done in a good and workmanlike manner was also against the great weight and preponderance of the evidence. "Good and workmanlike manner" is defined as "that quality of work performed by one who has the knowledge, training or experience necessary for the successful practice of a trade or occupation and performed in a manner generally considered proficient by those capable of judging such work." *Melody Home Manufacturing Co. v. Barnes*, 741 S.W.2d 349, 354 (Tex.1987).

Tom Stewart, vice president for L & S Air Conditioning Company, performed work on the Pagan–Lewis job after the units were installed by Hawkins. Besides warranty-type problems he had to work on, he testified that there were complaints that the air was not distributed properly. He said this was a grey area, but that in his opinion the ducts that were put in were too small. He also said the drip pans were too small and they had to resupport the drain lines because the spans were too long. He said they had to re-insulate the air units, but that this was usually the manufacturer's responsibility.

John Hawkins testified that Hawkins performed the work under the terms of the contract in a good and workmanlike manner. He said Hawkins was not responsible for the drain line work Stewart referred to. He said the ductwork system was designed by Hawkins and was approved by Western. He said that upon completion of the job, Hawkins had to revise the ductwork because Western revised its plans.

After reviewing all of the evidence concerning appellant's complaint, we find that the trial court's findings were not contrary to the overwhelming weight of the evidence so as to be clearly wrong or unjust. Appellant's points of error five and six are overruled.

By point of error number three, appellant complains that the trial court erred in failing to make a finding of fact that the cost overruns for the Pagan–Lewis shop area by Hawkins were in the amount of $4,467.16, excluding the showroom. Although a request for additional findings of fact and conclusions of law was filed, no specific request was made for this particular finding. (The amount was not the same.) Appellant cannot challenge the lack of particular findings when he failed to request them. *Mistletoe Express Service v. Sanchez*, 721 S.W.2d 418, 420 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.); *Goldston Corp. v. Hernandez*, 714 S.W.2d 350, 352 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.). Point of error number three is overruled.

We have addressed all points that are dispositive of this appeal and overrule all of appellant's points of error. The judgment of the trial court is AFFIRMED.