Jimmie MACHADO, Appellant,

v.

CRESTVIEW MOBILE HOUSING & Commercial Credit Corp., Appellee.

No. A14–82–280CV.

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 10, 1983.

Rehearing Denied March 10, 1983.

Thomas M. Schumacher, Hector Gonzalez Law Office, Sinton, for appellant.

Albert Lee Giddens, Pasadena, for appellee.

Before J. CURTISS BROWN, C.J., and DRAUGHN and ELLIS, JJ.

ELLIS, Justice.

This is an appeal from a suit to recover statutory penalties resulting from violation of the Texas Consumer Credit Code, Tex. Rev.Civ.Stat.Ann. art. 5069–6.01 et seq. (Vernon 1971 & Pamphlet Supp.1982).

Appellant purchased a mobile home from appellee on May 28, 1974, for a cash price of $6,492.73. The mobile home was purchased as a residence for appellant and his family. Appellant made a $622.73 down payment and signed a retail installment contract for the balance owing, to be paid in 120 monthly installments of $94.71 each. On September 1, 1977, appellant filed suit in San Patricio County against appellee and Commercial Credit Corporation, the assignee of the retail installment contract, alleging certain violations of the Consumer Credit Code, and seeking to recover statutory penalties and reasonable attorney's fees under Tex.Rev.

Civ.Stat.Ann. art. 5069–8.01(b) (Vernon 1971 & Pamphlet Supp.1982).[1] When appellant filed suit, neither appellee nor Commercial Credit Corporation had attempted to repossess appellant's mobile home; appellant's payments were current, and he claimed no actual damages. Appellant seeks a recovery that is strictly penal in nature.

Both appellee and Commercial Credit filed pleas of privilege which were granted. The suit against Commercial Credit Corporation was transferred to Dallas County and was subsequently dismissed for want of prosecution. The suit against appellee was transferred to Harris County. On September 8, 1981, the trial court, after hearing the evidence, found no violations of the Credit Code and rendered judgment for appellee. Appellant's motion for new trial was granted, and, as no new evidence was presented, the court again rendered judgment for appellee based on the legal arguments of both parties involved. A second motion for new trial was overruled by operation of law. The court filed its findings of fact and conclusions of law, stating that in view of the allegations and proof offered, no violation of Article 5069–6.01 et seq. had occurred. From this judgment, appellant brings forth six points of error.

We sustain appellant's third point of error and reverse the judgment below.

In his third point of error, appellant contends the trial court erred in failing to hold that the retail installment contract violated Article 5069–6.07 of the Consumer Credit Code. We must agree.

Article 5069–6.07 provides in pertinent part:

Unless the buyer has notice of the assignment or negotiation of his retail installment contract ... or any outstanding balance under either, payment therefor made by the buyer to the holder last known to him shall be binding upon all subsequent holders. No right of action or defense of a buyer arising out of a retail installment transaction which would be cut off by negotiation, shall be cut off by negotiation of the retail installment contract ... to any third party unless such holder acquires the contract relying in good faith upon a certification of completion ... and such holder gives notice of the negotiation to the buyer as provided in this article. . . .

The retail installment contract contains the following provision:

This contract may be assigned by seller, and when assigned, all rights of Seller shall vest in its assignee. All payments or other monies then owing hereunder shall be paid by Purchaser to the assignee, and *any payments otherwise made shall be at the risk of Purchaser if not received by the assignee.* (Emphasis added.)

This provision, in effect, waives buyer's right to bind the contract holder last known to him, as the terms state that payments made to anyone *other* than assignee are at purchaser's risk. No mention is made in this clause, nor anywhere in the contract, that this clause would only be effective if purchaser was on notice of any assignment of the contract.

Under the terms of the contract, if appellant continued to make payments to seller after the contract was assigned, whether or not notice was provided, his right to assert that defense upon suit for such payments by assignee would be waived. This clearly violates Article 5069–6.07. *See Commercial Credit Corporation v. Nichols,* 529 S.W.2d 588 (Tex.Civ.App.—Amarillo 1975, no writ).

Further, appellant argues in point of error three that the contract provision is also clearly in violation of Article 5069–6.-05(6) which provides:

No retail installment contract or retail charge agreement shall:

---

1. Article 8.01, supra, was amended in 1977 (Acts 1977, 65th Leg., P. 222, Ch. 11, § 1, effective August 31, 1977), and must be read in conjunction with the note which appears at the end of the article providing that the penalty for any violation of the Consumer Credit Code under Article 8.01(b) occurring in a transaction entered into prior to July 1, 1976 shall be determined by the law in effect prior to the effective date of the 1977 amendment.

. . . .

   (6) Provide that the buyer agree not to assert against the seller any claim or defense arising out of the sale. . . .

Again, upon analyzing the contractual provision putting appellant at risk for any payments made to other than appellee with or *without* notice, we agree that such provision is a waiver of appellant's rights, and, as such, violates Article 5069–6.05(6). In *Southwestern Investment Co. v. Mannix,* 557 S.W.2d 755 (Tex.1977), the Court, in discussing a violation of Article 5069–6.-05(4), stated that "the Legislature must have intended for Article 5069–6.05 to impose a duty upon the creditor not to include such an unconscionable provision in the installment contract." *Id.* at 764. We hold this reasoning equally applicable to Article 5069–6.05(6).

Appellee argues that no violation occurred because there is both a provision for assignment and an immediate assignment to Commercial Credit Corporation contained in the terms of the contract. Appellant does not claim that he did not receive a notification of assignment from Commercial Credit Corporation. Thus, we will not address the issue of whether the form contract itself meets the notice requirements as set out in Article 5069–6.07.[2]

The problem in the instant case lies with any *further* assignments by Commercial Credit. No provision for notice to the buyer of any such future assignments is included to cure the contractual provision in issue. The net effect is that the buyer is placed contractually at risk for any payments made to other than the current assignee, whether such assignee is known to buyer or not. It is no cure to the improper contractual clause in this case to state that no present monetary harm is being done to the buyer by its existence. The potential for future harm is inherent in its stated terms, and the omission of notice requirements to buyer for any subsequent assignments leaves the buyer in a vulnerable position.

In construing the statutes involved in appellant's points of error, the intent of the Legislature in enacting the Credit Code must be used as a guideline. In pertinent part, it is as follows:

"(1) Many citizens of our State are being victimized and abused in various types of credit and cash transactions. These practices impose a great hardship upon the people of our State.

. . . .

(2) Credit abuses now existing in our State stem from the fact that many types of credit transactions are not now subject to effective public regulation and control and the penalties imposed for usury do not provide effective or workable safeguards in this vital area of economic activity.

(3) Such abuses are especially prevalent in the area of consumer transactions both cash and credit. Unscrupulous operators, lenders and vendors, many of whom are transient to our State, are presently engaged in many abusive and deceptive practices in the conduct of their businesses. These unregulated practices bring great social and economic hardship to many citizens of our State. *They impose intolerable burdens on those segments of our society which can least afford to bear them—the uneducated, the unsophisticated, the poor and the elderly.* (Emphasis added.)

(4) These facts conclusively indicate a need for a comprehensive code of legislation ... to regulate credit sales and service ... to prohibit deceptive trade practices in all types of consumer transactions, *and to provide firm and effective penalties for usury and other prohibited practices.* (Emphasis added.)

(5) It is the intent of the Legislature in enacting this revision of Title 79 of the Revised Civil Statutes of Texas, 1925, to

---

**2.** In *Commercial Credit Corporation v. Nichols,* supra, appellant's contract, by its printed terms was assigned to Commercial Credit upon execution. The court held that the language of assignment in the printed contracts did not

meet the notice requirements of Tex.Rev.Civ. Stat.Ann. art. 5069–7.08 (Vernon 1971). The same notice requirements are set out in Article 5069–6.07.

protect the citizens of Texas from abusive and deceptive practices now being perpetrated by unscrupulous operators, lenders and vendors in both cash and credit consumer transactions ..." Declaration of Legislative Intent, Texas Laws 1967, Chapter 74, Section 1, at 608. Texas Revised Civil Statutes Annotated, Volume 15, pp. 1–2 (1971).

We feel the instant case is exemplary of the type of deceptive practices the Legislature sought to prevent in enacting the statutes in question, and in providing for the recovery of statutory damages which may be purely penal in nature. *See Zapata v. Ford Motor Credit Co.,* 615 S.W.2d 198 (Tex. 1981), *cert. dismissed,* 454 U.S. 1074, 102 S.Ct. 623, 70 L.Ed.2d 607 (1982).

The inclusion of this contract provision regarding assignment subjects appellee to the penalties provided for in Tex.Rev.Civ. Stat.Ann. art. 5069–8.01 (Vernon 1971 & Pamphlet Supp.1982). A single violation of the Consumer Credit Code will trigger the penalties under § 8.01.

We therefore reverse the judgment of the trial court and remand the cause for a determination of statutory damages and attorney's fees.