**TRADEWINDS FORD SALES, INC. and Ford Motor Credit Company, Appellants,**

v.

**Sylvester PAIZ, Jr., Appellee.**

No. 13–82–369–CV.

Court of Appeals of Texas, Corpus Christi.

Dec. 8, 1983.

Rehearing Denied Dec. 29, 1983.

Rick Rogers, Porter, Rogers, Dahlman & Gordon, Corpus Christi, Randall A. Hopkins, Lee Rosenthal, Baker & Botts, Houston, for appellants.

C.M. Henkel, III, Corpus Christi, for appellee.

Before GONZALEZ, BISSETT and UTTER, JJ.

OPINION

GONZALEZ, Justice.

This case involves an appeal from a suit to recover statutory penalties resulting from a violation of the Texas Consumer Credit Code. The sole issue in this appeal is whether paragraph sixteen (16) of the Retail Installment Contract violates TEX. REV.CIV.STAT.ANN. art. 5069–7.03(5) (Vernon Supp.1982–83). We hold that it does and affirm the trial court's granting a summary judgment to buyer-appellee.

*Facts*

On July 8, 1978, appellee bought a new 1978 Ford from Tradewinds in Corpus Christi, Texas. The purchase was financed by a retail installment contract which was subsequently assigned to Ford Motor Credit Company. Thereafter, appellee filed suit against appellants seeking to recover statutory penalties for alleged violations of the Texas Consumer Credit Code and the Federal Truth-in-Lending Act. Both sides filed opposing motions for summary judgment. The trial court granted appellee's motion and denied appellants' motion on the basis that the contract violated Art. 5069–7.03(5). The trial court entered judgment for appellee in the sum of $2,673.16 plus stipulated attorney's fees.

Paragraph sixteen (16) of the Retail Installment Contract reads:

"16. Assignment

The original Seller may assign this contract and his assignee shall acquire all of his interest in this contract and the Property and shall be entitled to all the rights and privileges of Seller hereunder. After Buyer receives notice of any such assignment, Buyer shall make all payments hereunder directly to the holder and the original Seller shall not be the agent of the holder for transmission of payments or otherwise. *Buyer shall not transfer or otherwise dispose of any interest in this contract or the Property.*" (Emphasis added).

Appellee asserts that the last sentence of paragraph sixteen (16) violates Art. 5069–7.03(5) because the contract does not expressly authorize the transfer of the vehicle upon written consent of the holder. Article 5069–7.03(5) provides:

"A buyer under a retail installment contract may, upon written consent of the holder, transfer his equity in the motor vehicle at any time to another person. . . ."

Appellants contend that no violation of the Texas Consumer Credit Code has occurred since appellee has never sought appellants' consent to transfer his interest in the vehicle. In addition, appellants assert that Art. 5069–7.03(5) does not impose a duty on them concerning what can or cannot be contained in a Retail Installment Contract.

Appellants also urge that paragraph twenty (20) of the Retail Installment Contract saves it from being illegal. Paragraph twenty (20) in pertinent part provides:

"20. General

This contract constitutes the entire agreement between the parties and no modification hereof shall be valid in any event, and Buyer expressly waives the right to rely thereon, unless made in writing signed by Seller."

Appellants assert that, since the contract may be modified in writing, there exists a method by which the buyer may obtain permission to transfer his interest in the property. We do not agree with appellants' position. If each general provision allowing for the modification of a Retail Installment Contract could save the contract from otherwise being illegal, there would be little use in laws designed to protect credit buyers of motor vehicles. Since appellants chose to include in its contract a provision for the disposition of the vehicle subject of the contract, we hold that such provision must not prohibit what is specifically allowed by the Texas Consumer Credit Code. This is so because, generally, a seller has a duty to prepare a contract in accordance with the standards established by the Texas Consumer Credit Code. *Mitchell Motors, Inc. v. Bell,* 528 S.W.2d 856 (Tex.Civ.App.—San Antonio 1974, writ ref'd n.r.e.). The court in *Mitchell* reasoned:

In view of the clear legislative intent to protect buyers by preventing abusive and deceptive practices by sellers, and to achieve this objective by regulating the conduct and activities of sellers, there can be no doubt that the legislature intended to achieve its goal by imposing duties on the persons who, in the legislative judgment, had, under the old law, been guilty of abusive and deceptive practices. . . .

Regulation presupposes control by imposition of rules and standards to be followed, and it would be nonsensical to hold that the legislature sought to impose rules and standards to be followed by sellers without imposing a duty on the regulated persons to comply with such rules and standards. To attempt to regulate the conduct of a class of persons without imposing duties on the members of the regulated class would be an attempt to regulate by not regulating. It is obvious that, if the legislative attempt to protect the credit buyers of motor vehicles is to be regarded as anything other than an exercise in futility, *the legislative pronouncements concerning the form and contents of the retail installment contract must be construed as imposing duties on the seller,* since it is the conduct of the seller which the legislature sought to regulate. 528 S.W.2d 856 at 860. [Emphasis added.]

*Mitchell* at 860; *see also: Machado v. Crestview Mobile Housing,* 650 S.W.2d 494 (Tex. App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.)

The judgment of the trial court is affirmed.